# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rose Corporation,                 :
               Petitioner      :
                               :
           v.                :    No. 661 C.D. 2019
                               :    Argued: December 11, 2019
Workers' Compensation Appeal    :
Board (Espada),                 :
              Respondent    :

BEFORE:     HONORABLE MARY HANNAH LEAVITT, President Judge
                  HONORABLE RENÉE COHN JUBELIRER, Judge
                  HONORABLE P. KEVIN BROBSON, Judge
                  HONORABLE PATRICIA A. McCULLOUGH, Judge
                  HONORABLE ANNE E. COVEY, Judge
                  HONORABLE CHRISTINE FIZZANO CANNON, Judge
                  HONORABLE ELLEN CEISLER, Judge

OPINION BY
JUDGE COHN JUBELIRER[1]               FILED: August 17, 2020

After our Court in *Protz v. Workers' Compensation Appeal Board (Derry Area School District)*, 124 A.3d 406, 416-17 (Pa. Cmwlth. 2015) (*Protz I*), and subsequently the Supreme Court in *Protz v. Workers' Compensation Appeal Board (Derry Area School District)*, 161 A.3d 827, 835-36 (Pa. 2017) (*Protz II*), declared the impairment rating evaluation (IRE) provision in former Section 306(a.2) of the Workers' Compensation Act[2] (WC Act) an unconstitutional delegation of legislative authority, the General Assembly enacted Act 111.[3] Act 111 repealed the

---

[1] This matter was reassigned to the undersigned judge on April 8, 2020.

[2] Act of June 2, 1915, P.L. 736, *as amended*, added by Section 4 of the Act of June 24, 1996, P.L. 350, *formerly* 77 P.S. § 511.2, repealed by the Act of October 24, 2018, P.L. 714, No. 111.

[3] Act of October 24, 2018, P.L. 714, No. 111.

unconstitutional IRE provision and replaced it with a new IRE provision, Section 306(a.3), 77 P.S. § 511.3, that was virtually identical and effective immediately. At the time of Act 111's enactment in October 2018, Rose Corporation (Employer) had a pending appeal of a decision by a Workers' Compensation Judge (WCJ) reinstating Jose Espada (Claimant) to total disability status as of the date of an IRE performed under the former IRE provision before the Workers' Compensation Appeal Board (Board). Also, while Employer's appeal was pending before the Board, this Court issued its decision in *Whitfield v. Workers' Compensation Appeal Board (Tenet Health System Hahnemann LLC)*, 188 A.3d 599 (Pa. Cmwlth. 2018), in which we held, in relevant part, that a claimant seeking reinstatement of total disability benefits was entitled to reinstatement as of the date the petition to reinstate was filed, provided the claimant demonstrates ongoing disability and the petition is filed within three years of the last payment of compensation. Accordingly, the Board, citing *Whitfield*, affirmed the WCJ's Decision but modified the date of reinstatement to September 8, 2017, the date Claimant filed his reinstatement petition (Petition). The Board did not address the effect of Act 111, if any. Employer now seeks review of the Board's Order, arguing that because the IRE that was previously performed otherwise conformed to the requirements of Act 111, it should stand, and Claimant's disability status should have remained at partial disability. However, the General Assembly did not expressly provide either that an IRE performed prior to the effective date of Act 111 has any effect under Act 111 or that Act 111, in its entirety, should be applied retroactively. Moreover, Act 111 constitutes a substantive change in the law, which cannot be applied retroactively absent clear legislative intent to do so, which is lacking. Accordingly, we discern no error in the Board's Order and, therefore, affirm.

## I. BACKGROUND

The facts of this matter are not in dispute. Claimant suffered a work-related injury on September 6, 2006. A Notice of Compensation Payable was subsequently issued, providing Claimant with total disability benefits in the amount of $360 per week based upon an average weekly wage of $400 per week, beginning on September 25, 2006. Between July 9, 2007, and November 13, 2012, Claimant's benefits were suspended. On May 22, 2013, after receiving at least 104 weeks of total disability benefits, pursuant to former Section 306(a.2)(1), Claimant underwent an IRE, which was performed using the Sixth Edition of the American Medical Association's (AMA) *Guides to the Evaluation of Permanent Impairment* (*Guides*).[4] The IRE showed a whole person impairment[5] of five percent. Under former Section 306(a.2)(2), which was then in effect, if a claimant's impairment rating was equal to or greater than 50%, the claimant was presumed to be totally disabled and would continue to receive total disability compensation benefits, and if the claimant's impairment rating was less than 50%, the claimant would receive partial disability benefits. *Former* 77 P.S. § 511.2(2). The change in status from total to partial disability did not affect the amount of compensation paid. *Former* 77 P.S.

---

[4] At the time, Section 306(a.2) provided that IREs were to be performed "pursuant to the most recent edition of the . . . *Guides* . . . ." *Former* 77 P.S. § 511.2(1). As discussed further below, this was the offending language that was struck down as unconstitutional.

[5] The term "impairment" is defined by former Section 306(a.2)(8)(i) and Section 306(a.3)(8)(i) as "an anatomic or functional abnormality or loss that results from the compensable injury and is reasonably presumed to be permanent." *Former* 77 P.S. § 511.2(8)(i); 77 P.S. § 511.3(8)(i). The definition of "impairment rating" is also identical between the two versions of the IRE provisions as "the percentage of permanent impairment of the whole body resulting from the compensable injury. The percentage rating for impairment . . . shall represent only the impairment that is the result of the compensable injury and not for any preexisting work-related or nonwork-related impairment." *Former* 77 P.S. § 511.2(8)(ii); 77 P.S. § 511.3(8)(ii).

3

§ 511.2(3). Rather, the change in status limits the number of weeks a claimant can receive disability compensation to 500; then the benefits will terminate. Section 306(b)(1) of the WC Act, 77 P.S. § 512(1); *Diehl v. Workers' Comp. Appeal Bd. (IA Constr.)*, 972 A.2d 100, 104-05 (Pa. Cmwlth. 2009). Based upon the IRE, Employer issued a Notice of Change of Workers' Compensation Disability Status on June 13, 2013, modifying Claimant's disability status from total to partial as of the date of the IRE. Claimant did not challenge the change in status at that time.

Approximately two years later, this Court issued its decision in *Protz I,* 124 A.3d at 416-17, wherein the Court held Section 306(a.2) was an unconstitutional delegation of legislative powers. In that case, the claimant, like Claimant here, underwent an IRE performed utilizing the Sixth Edition of the *Guides*. The claimant's impairment rating in *Protz* was 10%. The employer filed a modification petition based upon the IRE, which the WCJ granted, thereby converting the claimant's total disability benefits to partial disability benefits. The claimant appealed to the Board, challenging Section 306(a.2), which provided, in pertinent part, that a claimant's impairment rating shall be determined "pursuant to the most recent edition of the . . . *Guides*," *former* 77 P.S. § 511.2, as an unconstitutional delegation of legislative authority in violation of article II, section 1 of the Pennsylvania Constitution.[6] The claimant asserted in *Protz I* that Section 306(a.2) effectively gave the AMA, which adopted the *Guides*, authority to establish the criteria under which a claimant's disability status is determined instead of the General Assembly.

---

[6] Article II, section 1 of the Pennsylvania Constitution provides: "The legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives." PA. CONST. art. II, § 1.

We acknowledged that there are situations in which the General Assembly may delegate its legislative power but noted that such authority was not without constraints. We explained that "the basic policy choices must be made by the Legislature" and "the legislation must contain adequate standards which will guide and restrain the exercise of the delegated administrative functions." *Protz I*, 124 A.3d at 413 (quotations omitted). Because the General Assembly did not "prescribe any intelligible standards to guide the AMA's determination regarding the methodology to be used in grading impairments," we held Section 306(a.2) of the WC Act was unconstitutional. *Id.* at 415 (emphasis omitted). Accordingly, we vacated the Board's decision and remanded the matter to the Board with instruction to remand to the WCJ for an IRE determination applying the Fourth Edition of the *Guides*, which was the edition in effect at the time of Section 306(a.2)'s enactment. *Id.* at 416.

In *Protz II*, the Pennsylvania Supreme Court subsequently affirmed, in part, our decision, holding "[b]y any objective measure, the authority delegated to the AMA in Section 306(a.2) of the [WC] Act is even more broad and unbridled" than in other nondelegation cases. *Protz II*, 161 A.3d at 835. The Supreme Court identified several issues with Section 306(a.2):

> The General Assembly did not favor any particular policies relative to the *Guides*' methodology for grading impairments, nor did it prescribe any standards to guide and restrain the AMA's discretion to create such a methodology.[] Without any parameters cabining its authority, the AMA would be free to: (1) concoct a formula that yields impairment ratings which are so inflated that virtually every claimant would be deemed to be at least 50% impaired; or (2) draft a version of the *Guides* guaranteed to yield impa[ir]ment ratings so miniscule that almost no one who undergoes an IRE clears the 50% threshold; or (3) do anything in between those two extremes. The AMA could add new chapters to the *Guides*, or it could remove existing ones. It could even create

5

distinct criteria to be applied only to claimants of a particular race, gender, or nationality.[]

Consider also that the AMA could revise the *Guides* once every ten years or once every ten weeks. If the AMA chooses to publish new editions infrequently, Pennsylvania law may fail to account for recent medical advances. By contrast, excessive revisions would likely pose severe administrative headaches, inasmuch as the *Guides* automatically have the force and effect of law once published. As these hypotheticals illustrate, the General Assembly gave the AMA *de facto*, unfettered control over a formula that ultimately will determine whether a claimant's partial-disability benefits will cease after 500 weeks.

Equally problematic, the General Assembly did not include in Section 306(a.2) any of the procedural mechanisms that this Court has considered essential to protect against "administrative arbitrariness and caprice." The General Assembly did not, for example, require that the AMA hold hearings, accept public comments, or explain the grounds for its methodology in a reasoned opinion, which then could be subject to judicial review.[] Further, the AMA physicians who author the *Guides* are, of course, not public employees who may be subject to discipline or removal.

*Id.* at 835-36 (internal footnotes and citations omitted). Unlike this Court, however, the Supreme Court found the offending language could not be severed from the WC Act without rendering the remainder of Section 306(a.2) "incomprehensible" and struck the **entirety** of Section 306(a.2) as unconstitutional. *Id.* at 840-41.

Following the Supreme Court's decision in *Protz II*, Claimant here, like many others, sought to reinstate his disability status to total disability based upon that decision. Claimant filed his Petition on September 8, 2017, seeking to reinstate his disability status from partial to total, retroactive to the date of the IRE, May 22, 2013.[7] Employer filed an answer to the Petition, denying the allegations and

---

[7] In the intervening period, Claimant also filed a penalty petition alleging Employer violated the WC Act by failing to pay reasonable and necessary medical expenses, and Employer filed a modification petition alleging that work was available to Claimant based upon a labor

asserting that Claimant waived his right to challenge the validity of the IRE by not challenging it earlier.

After a series of hearings and upon consideration of the parties' briefs and proposed findings of fact and conclusions of law, the WCJ issued a decision on April 11, 2018. Therein, the WCJ found, in relevant part, based upon *Protz II*, that Claimant was "entitled to a modification or change of the status of his workers' compensation wage loss benefits from partial disability to total disability . . . as of May 22, 2013," which was the date of the IRE. (WCJ Finding of Fact (FOF) ¶ 27.)

Employer appealed to the Board, arguing, *inter alia*, that the WCJ erred in concluding that Claimant was entitled to reinstatement to total disability based upon *Protz II* and erred in concluding that *Protz II* was retroactive. The Board affirmed the WCJ's Decision as it related to reinstatement to total disability but modified the effective date to September 8, 2017, which was the date Claimant filed his Petition. In reaching this conclusion, the Board relied upon this Court's decision in *Whitfield*, which was handed down during the pendency of Employer's appeal. (Board Opinion (Op.) at 2.)

In *Whitfield*, we recognized that a claimant has a statutory right under Section 413(a) of the WC Act, 77 P.S. § 772, to file a petition seeking to reinstate benefits within three years of the date of the most recent payment of compensation. 188 A.3d at 612. We declined to find *Protz II* generally retroactive, analyzing the

market survey. The petitions were heard simultaneously with Claimant's Petition seeking reinstatement to total disability status. The WCJ ultimately denied Employer's modification petition and granted Claimant's penalty petition. While Employer appealed the grant of the penalty petition, it did not appeal the denial of its modification petition to the Board. The Board subsequently affirmed the WCJ's Decision related to the penalty petition. Employer did not seek further review of that determination. Therefore, neither the penalty petition nor modification petition is before this Court.

7

claimant's request for reinstatement to total disability status based upon *Protz II* under Section 413(a), and holding that a claimant must demonstrate an ongoing disability from the work injury, which can be achieved through the claimant's testimony alone; medical evidence is not required.[8] *Whitfield*, 188 A.3d at 614-15. Finally, we held that unless an employer rebuts that evidence, the claimant is entitled to reinstatement as of the date the claimant's petition was filed.[9] *Id.* at 616.

Here, the Board reasoned that Claimant's Petition was filed within three years of the date of the most recent compensation, and the WCJ credited Claimant's treating physician, who testified Claimant remains disabled. (Board Op. at 3-4.) Therefore, the Board held Claimant was entitled to reinstatement to total disability status as of September 8, 2017, which was the date of his Petition. (*Id.* at 4.) Employer now seeks this Court's review based upon the implications of Act 111, which was enacted while Employer's appeal before the Board was pending.

Act 111 was enacted on October 24, 2018, and went into effect immediately. It was a legislative response to *Protz II* and an attempt by the General Assembly to

---

[8] Although the claimant in *Whitfield* had already exhausted the 500 weeks of partial disability, as the Board noted in its Opinion, (Board Op. at 3 n.4), in two cases considered seriately with *Whitfield*, we applied the same principles to claimants within the 500-week partial disability period, such as Claimant here. *See Moore v. Workers' Comp. Appeal Bd. (Sunoco, Inc. (R&M))* (Pa. Cmwlth., No. 715 C.D. 2017, filed June 6, 2018), *appeal denied*, 199 A.3d 866 (Pa. 2018), and *Pavlack v. Workers' Comp. Appeal Bd. (UPMC South Side)* (Pa. Cmwlth., No. 702 C.D. 2017, filed June 6, 2018), *appeal denied*, 199 A.3d 341 (Pa. 2018).

[9] In *Dana Holding Corp. v. Workers' Compensation Appeal Board (Smuck)*, 195 A.3d 635 (Pa. Cmwlth. 2018), this Court held that a claimant who was actively litigating the IRE at the time of *Protz II* was entitled to reinstatement as of the date of the IRE because the IRE was not final. The Supreme Court recently affirmed that holding. *Dana Holding Corp. v. Workers' Comp. Appeal Bd. (Smuck)*, __ A.3d __, (Pa., No. 44 MAP 2019, filed June 16, 2020). Because Claimant was not actively challenging the IRE at the time of *Protz II*, *Dana Holding* does not require reinstatement as of the date of the IRE; instead, the date of Claimant's reinstatement is controlled by *Whitfield* and its progeny.

remedy the unconstitutionality of former Section 306(a.2). Act 111 repealed former Section 306(a.2) and replaced it with Section 306(a.3). While Section 306(a.3) is largely a reenactment of former Section 306(a.2), there are significant differences. First, similar to former Section 306(a.2)(1), under Section 306(a.3)(1), once a claimant receives 104 weeks of total disability compensation, an insurer or employer may require the claimant to submit to an IRE. However, Act 111 specifies that the IRE must be performed utilizing "the [AMA] *Guides* . . . , 6th edition (second printing April 2009)," curing the unconstitutional delegation in former Section 306(a.2), which provided "the most recent edition of the [AMA] *Guides*" was to be utilized.[10]  *Compare* 77 P.S. § 511.3, *with former* 77 P.S. § 511.2.  Second, the threshold impairment rating has been changed. Under the former IRE provision, a claimant was presumed to be totally disabled if the impairment rating was equal to or greater than **50%**, while under Section 306(a.3)(2), a claimant is presumed to be totally disabled if the impairment rating threshold is equal to or greater than **35%**. *Former* 77 P.S. § 511.2(2); 77 P.S. § 511.3(2). If the impairment rating is **less** than

_____

[10] Section 306(a.3)(1) provides:

> When an employe has received total disability compensation pursuant to clause (a) for a period of one hundred and four weeks, unless otherwise agreed to, the employe shall be required to submit to a medical examination which shall be requested by the insurer within sixty days upon the expiration of the one hundred and four weeks to determine the degree of impairment due to the compensable injury, if any. The degree of impairment shall be determined based upon an evaluation by a physician who is licensed in this Commonwealth, who is certified by an American Board of Medical Specialties-approved board or its osteopathic equivalent and who is active in clinical practice for at least twenty hours per week, chosen by agreement of the parties, or as designated by the department, pursuant to the [AMA] "Guides to the Evaluation of Permanent Impairment," 6th edition (second printing April 2009).

77 P.S. § 511.3(1).

9

the threshold, under either the former or current provision, an employer or insurer may change a claimant's disability status to partial upon 60 days' notice.[11] *Id.* Under Section 306(a.3), a claimant has the same right as before to appeal a change in disability status within the 500-week window of receiving partial disability benefits by presenting an IRE that shows the claimant meets the impairment rating threshold.[12] 77 P.S. § 511.3(4); *former* 77 P.S. § 511.2(4). Section 306(a.3)(7) also sets the same cap on the number of weeks of total and partial disability, 104 weeks and 500 weeks, respectively. 77 P.S. § 511.3(7); *former* 77 P.S. § 511.2(7).[13]

---

[11] Section 306(a.3)(2) provides:

> If such determination results in an impairment rating that meets a threshold impairment rating that is equal to or greater than thirty-five per centum impairment under the [AMA] "Guides to the Evaluation of Permanent Impairment," 6th edition (second printing April 2009), the employe shall be presumed to be totally disabled and shall continue to receive total disability compensation benefits under clause (a). If such determination results in an impairment rating less than thirty-five per centum impairment under the [AMA] "Guides to the Evaluation of Permanent Impairment," 6th edition (second printing April 2009), the employe shall then receive partial disability benefits under clause (b): Provided, however, That no reduction shall be made until sixty days' notice of modification is given.

77 P.S. § 511.3(2).

[12] Section 306(a.3)(4) provides:

> An employe may appeal the change to partial disability at any time during the five hundred-week period of partial disability; Provided, That there is a determination that the employe meets the threshold impairment rating that is equal to or greater than thirty-five per centum impairment under the [AMA] *Guides . . .* , 6th edition (second printing April 2009).

77 P.S. § 511.3(4).

[13] Section 306(a.3)(7) provides:

> In no event shall the total number of weeks of partial disability exceed five hundred weeks for any injury or recurrence thereof, regardless of the changes in status in

## II.    PARTIES' ARGUMENTS

On appeal,[14] Employer argues the Board did not consider the implications or effect of Act 111.  Since the IRE is a medical determination, Employer asserts it is not affected by a change in law and, therefore, the IRE performed in 2013 under the Sixth Edition of the *Guides*, which is the current standard, remains valid.  To the extent Claimant argues the IRE is stale, Employer asserts that an IRE stands for 500 weeks unless a claimant produces an IRE showing an impairment rating above the threshold, currently 35%.  Employer further asserts that there is no time limit on when it can modify a claimant's disability status based upon an IRE.  Employer argues Act 111 essentially reenacted the prior law concerning IREs with the exception of two conditions – use of the Sixth Edition of the *Guides* and a lower impairment rating – both of which have been satisfied here.  Employer claims Act 111 provides for an employer/insurer to receive credit for the period of total disability and partial disability before its enactment.  Accordingly, Employer asserts it is entitled to a credit and continuation of partial disability benefits since the IRE performed in 2013 conforms to the requirements of Act 111.  Employer reiterates that there is no limit on when an employer may seek modification once 104 weeks

disability that may occur.  In no event shall the total number of weeks of total disability exceed one hundred and four weeks for any employe who does not meet a threshold impairment rating that is equal to or greater than thirty-five per centum impairment under the [AMA] *Guides* . . . , 6th edition (second printing April 2009), for any injury or recurrence thereof.

77 P.S. § 511.3(7).

[14] This Court's review in workers' compensation appeals "is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated."  *Elberson v. Workers' Comp. Appeal Bd. (Elwyn, Inc.)*, 936 A.2d 1195, 1198 n.2 (Pa. Cmwlth. 2007).

11

have passed. It claims it could seek modification nine years after an IRE and the partial disability status would still be effective retroactive to the date of the IRE.

Claimant argues the Board erred in reinstating Claimant's status to total disability only as of the date of the Petition instead of the date of the IRE.[15] Claimant further asserts that Employer must pursue a new IRE in order to modify Claimant's disability status.

## III. DISCUSSION

### A. *General Legal Principles.*

Here, the parties do not dispute that the IRE performed in 2013 would comply with the requirements of Section 306(a.3), as it was done under the Sixth Edition and Claimant had an impairment rating of five percent. Rather, the dispute is whether Employer can utilize the 2013 IRE to maintain Claimant's disability status as partial, through the retroactive application of Act 111, despite *Protz II*. "A retroactive law [is] defined as one which relates back to and gives a previous transaction a legal effect different from that which it had under the law in effect when it transpired."[16] *Keystone Coal Mining Corp. v. Workmen's Comp. Appeal Bd. (Wolfe)*, 673 A.2d 418, 420 (Pa. Cmwlth. 1996) (quoting *Dep't of Labor & Indus., Bureau of Emp't Sec. v. Pa. Eng'g Corp.*, 421 A.2d 521, 523 (Pa. Cmwlth. 1980)). Pursuant to the rules of statutory construction, "[n]o statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly." Section 1926 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1926. In addition, Section 1953 of the Statutory Construction Act of 1972 provides, in

---

[15] Although Claimant did not file a cross-petition for review, Claimant devoted the majority of his brief to this alleged error.

[16] Black's Law Dictionary defines "retroactive" as "extending in scope or effect to matters that have occurred in the past." *Retroactive*, Black's Law Dictionary (11th ed. 2019).

relevant part, that "new provisions shall be construed as effective only from the date when the amendment became effective." 1 Pa.C.S. § 1953. In short, "statutes must be given prospective effect only, unless the statute includes clear language to the contrary." *Keystone*, 673 A.2d at 420.

An exception to this rule is where the statute is merely procedural and does not alter any substantive rights, in which case it may be retroactively applied, irrespective of whether the statutory amendment includes an express retroactivity clause. *Id.* at 421. We have explained the difference between substantive and procedural changes, stating:

> A substantive right is implicated when the retroactive application of a statute imposes new legal burdens on past transactions or occurrences. . . . On the other hand, procedural statutes establish the method for enforcing a right, but have no bearing on whether a claimant has a legal entitlement to relief under the facts as they exist in a particular case. . . .

*Id.* (internal citations omitted).

This Court has examined the difference between substantive and procedural amendments in the workers' compensation context on a number of occasions. For instance, in *Keystone*, the employer filed a petition for modification alleging it was entitled to a credit for unemployment compensation benefits the claimant received based upon an amendment to Section 204 of the WC Act, 77 P.S. § 71, which occurred one month earlier. Because the amendment provided that "[n]o changes in indemnity compensation payable by this act shall affect payments of indemnity compensation for injuries sustained prior to the effective date of this section," we held nothing in the new legislation indicated that the General Assembly intended the amended version of Section 204 to apply retroactively. *Keystone*, 673 A.2d at 420-21. Moreover, we concluded the amendment could not "be characterized as merely

13

procedural because it affects [the c]laimant's right to benefits as fixed by the old version of Section 204, and it gives [the employer] a new right to relief which it did not have under the old law." *Id.* at 421. We further explained the amendment "would have a direct negative impact on [the c]laimant's substantive right to collect workers' compensation and unemployment compensation benefits simultaneously." *Id.* Therefore, we affirmed the Board's order affirming a WCJ's decision holding the amended section did not apply retroactively and denying the employer's petition.

We examined the retroactivity of a change to the WC Act again in *Miegoc v. Workers' Compensation Appeal Board (Throop Fashions/Leslie Fay and ITS Hartford)*, 961 A.2d 269 (Pa. Cmwlth. 2008). There, the claimant sought review of the Board's order suspending benefits on the basis the claimant was found to be able to return to work. The claimant had argued the suspension was invalid because the employer did not provide the claimant with notice of ability to return to work, as required by Section 306(b)(3) of the WC Act, 77 P.S. § 512(3). That provision was enacted after the claimant suffered the work injury. We held that because Section 306(b)(3) constituted a procedural change, the employer was required to comply with its terms. We explained:

> [S]ection 306(b)(3) d[id] not alter the facts that an employer must prove in order to obtain a suspension.[] Rather, [S]ection 306(b)(3) requires an employer to share new medical information concerning the claimant's physical capacity to work and to notify the claimant that this information could affect the claimant's entitlement to benefits.

*Miegoc*, 961 A.2d at 273-74 (footnote and emphasis omitted).

More recently, we examined the effect of a change in the WC Act as it applied to firefighters seeking compensation for cancer claims. In *City of Warren v. Workers' Compensation Appeal Board (Haines)*, 156 A.3d 371 (Pa. Cmwlth. 2017),

14

we determined that Act 46 of 2011,[17] which amended the WC Act by adding Sections 108(r) and 301(f), 77 P.S. §§ 27.1(r), 414, was a substantive change in the law. In reaching this conclusion, we reiterated the general premise that "statutes are to be construed to operate prospectively, absent clear language to the contrary." *City of Warren*, 156 A.3d at 376 (quotation omitted). We examined a regulation promulgated by the Legislative Reference Bureau[18] to assist the General Assembly in drafting legislation. This regulation contains specific directions on drafting a retroactivity clause and provides:

> (a) *Use.* If a statute is to apply retroactively, it is necessary to include a provision to this effect. The [Statutory Construction Act of 1972] (1 Pa.C.S. § 1926) provides that no statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly.
>
> (b) *Form.* A retroactive provision may be in substantially the following form:
>
> "This act shall take effect immediately and shall be retroactive to January 1, 1973."

101 Pa. Code § 15.71.

We concluded Act 46 did not contain such a retroactivity clause and instead merely provided it was effective immediately. *City of Warren*, 156 A.3d at 376. Therefore, we examined whether the amendment was procedural or substantive. We noted that "[a] statute is not retroactive 'merely because some of the facts or

---

[17] Act of July 7, 2011, P.L. 251, No. 46.

[18] The Legislative Reference Bureau was created by statute in 1909 "to prepare requested legislative bills and resolutions for introduction in the General Assembly; to advise members of the Legislature and legislative committees; and, from time to time, to prepare proposed codifications of existing general statutes for adoption or rejection by the General Assembly." About the Legislative Reference Bureau, *available at* http://www.palrb.net/about.html (last visited August 14, 2020).

conditions upon which its application depends came into existence prior to its enactment.'" *Id.* (quoting *Gehris v. Dep't of Transp.*, 369 A.2d 1271, 1273 (Pa. 1977)). We reasoned that Act 46 provided a claimant with 600 weeks after the date of last exposure to the hazard to file a claim petition, which was a statute of repose, not a statute of limitations. *Id.* at 377-78. Because "[a] statute of limitations extinguishes the remedy," it is procedural, but because "a statute of repose extinguishes both the remedy and the right," it is substantive. *Id.* at 377. Thus, we held Act 46 did not have a retroactive effect.

### B. Legislative Intent.

With the above principles in mind, we begin our review by examining whether Act 111 contains a retroactivity clause or like language evidencing clear legislative intent that the new IRE provision is to have retroactive effect. *Keystone*, 673 A.2d at 420. Similar to the statutory provision at issue in *City of Warren*, Section 4 of Act 111 provides simply, "[t]his act shall take effect immediately." This falls short of the clarity the Legislative Reference Bureau provided in its regulations for drafting a retroactivity clause to make Act 111 retroactive in its entirety. 101 Pa. Code § 15.71.

Employer asserts that the legislative intent for giving Act 111 **full** retroactive effect can be found in Section 3 of Act 111. In relevant part, Section 3 of Act 111 provides:

> (1) **For the purposes of determining whether an employee shall submit to a medical examination to determine the degree of impairment and whether an employee has received total disability compensation for the period of 104 weeks under [S]ection 306(a.3)(1) of the [WC A]ct**, an insurer **shall be given credit** for weeks of total disability compensation paid prior to the effective date of this paragraph. **This section shall not be construed to alter the**

16

> **requirements of [S]ection 306(a.3) of the [WC A]ct.**
>
> (2) **For the purposes of determining the total number of weeks of partial disability compensation payable under [S]ection 306(a.3)(7) of the [WC A]ct**, an insurer **shall be given credit** for weeks of partial disability compensation paid **prior to the effective date** of this paragraph.

(Emphasis added.)

By its very terms, Section 3 does not provide that **all** of Act 111 applies retroactively. Section 3 states that employers/insurers are given credit for weeks of total and/or partial compensation benefits paid **prior** to Act 111's enactment. The plain language of Section 3 evidences legislative intent to give effect, **after** the passage of Act 111, to these weeks of compensation, although they were paid before the passage of Act 111. Importantly, the General Assembly **did not** explicitly state or imply that an **IRE previously performed** before Act 111's enactment could be used to meet the requirements of Act 111.

The plain language of Section 3 establishes a mechanism by which employers/insurers may receive credit for weeks of compensation previously paid. First, Section 3(1) provides that an employer/insurer "shall be given credit for weeks of total disability compensation paid prior to the effective date of this paragraph" for purposes of determining whether the 104 weeks of total disability had been paid. This 104 weeks is important because, under both the former and current IRE provisions, a claimant need not attend an IRE until after the claimant receives 104 weeks of total compensation. 77 P.S. § 306(a.3)(1); *former* section 77 P.S. § 306(a.2)(1). *See* Section 3(1) of Act 111. Therefore, pursuant to Section 3(1), an employer/insurer will receive credit towards this 104 weeks for any weeks of total disability benefits that were previously paid prior to Act 111's enactment. Second, an employer/insurer will be given credit for any weeks of partial disability

17

compensation paid prior to enactment of Act 111 "[f]or the purposes of determining the total number of weeks of partial disability compensation payable under [S]ection 306(a.3)(7) of the [WC A]ct." Section 3(2) of Act 111. In short, any weeks of partial disability previously paid will count towards the 500-week cap on such benefits.

Accordingly, Section 3 of Act 111 does not evidence clear legislative intent that the entirety of Act 111 should be given retroactive effect. Instead, it appears the General Assembly intended that employers and insurers that relied upon former Section 306(a.2) to their detriment by not pursuing other methods of a modification[19] should not bear the entire burden of the provision being declared unconstitutional. Through the use of very careful and specific language, the General Assembly provided employers/insurers with credit for the weeks of compensation, whether total or partial in nature, previously paid. However, for the benefit of claimants, the General Assembly also specifically reduced the impairment rating necessary for a claimant's status to be changed from 49% or lower to 34% or lower, making it more difficult for employers to change total disability status to partial disability status. That the General Assembly used specific language to give retroactive effect to these carefully selected individual provisions does not make the entirety of Act 111 retroactive as the amendment lacks clear language to that effect. *City of Warren*, 156 A.3d at 376.

C.     *Whether Act 111 is a Substantive or Procedural Change in the Law.*

Having concluded that the General Assembly did not "expressly provide[] that [Act 111] shall be applied retroactively," *Miegoc*, 961 A.2d at 271, we next examine whether Act 111 constitutes a substantive or procedural change in the law. If it is a

_____

[19] IREs are generally viewed as a more cost-efficient method of modifying a claimant's benefits compared to alternatives.

procedural change in the law, it may still be applied retroactively, but if it is a substantive change in the law, it cannot be retroactively applied without express legislative language, which we have concluded is lacking. *Keystone*, 673 A.2d at 421.

As discussed above, Act 111 repealed former Section 306(a.2), which had been declared unconstitutional in *Protz II*, and replaced it with Section 306(a.3). That section established a method for determining a claimant's whole body impairment using the Sixth Edition of the *Guides*, second printing, and established a new impairment threshold, 35%, for modifying a claimant's disability status. At the time Act 111 was enacted, Claimant's disability status had **already been reinstated from partial to total** based upon his Petition, which asserted *Protz II* required that the prior IRE be invalidated. Thus, retroactive application of Act 111 would have a **direct negative impact on Claimant's disability status** by giving effect to an IRE performed under a process that the Supreme Court in *Protz II* found constitutionally invalid. "[P]rocedural statutes . . . have no bearing on whether a claimant has a legal entitlement to relief under the facts as they exist in a particular case." *Keystone*, 673 A.2d at 421. Therefore, it cannot be said that the amendment was merely procedural. This conclusion is supported by the Supreme Court's recent holding in *Dana Holding Corp. v. Workers' Comp. Appeal Bd. (Smuck)*, __ A.3d __, __ (Pa., No. 44 MAP 2019, filed June 16, 2020), slip op. at 29, wherein the Supreme Court addressed whether the former IRE provisions were substantive or procedural. The Supreme Court stated "the notion that [former] Section 306(a.2) can be couched as procedural, and that its substantive import can be overlooked," as the employer in that case alleged, "is not creditable." *Id.* Given the similarities between former Section 306(a.2) and Section 306(a.3), it is likewise "not creditable" to consider the

19

new IRE provisions as procedural. *Id.* Because substantive changes in the law, such as this, require express legislative language providing for retroactivity, which is lacking here, Act 111 cannot be applied retroactively. *Keystone*, 673 A.2d at 421.

## IV. CONCLUSION

In summary, under Act 111, Employer would receive credit for the 104 weeks of total disability it previously paid Claimant before Employer issued its notice on June 13, 2013,[20] changing Claimant's disability status to partial under the now invalidated Section 306(a.2) based on the May 22, 2013 IRE. Because Claimant already received 104 weeks of total disability benefits, under Section 306(a.3)(1), Employer may seek a new IRE. Should Employer choose to obtain a new IRE that utilizes the Sixth Edition of the *Guides* and yields an impairment rating of less than 35%, Employer could then change Claimant's disability status back to partial by following the process set forth in Section 306(a.3). If Claimant disputes the change, he could appeal the change in status pursuant to Section 306(a.3)(4). Assuming the change in status is either not appealed or upheld on appeal, Employer would be entitled to credit for the weeks of partial disability benefits paid between May 22, 2013, when Employer obtained the first IRE and changed Claimant's benefits to partial disability, and September 8, 2017, when Claimant filed his Petition.[21] Employer would be liable for 500 weeks of partial disability compensation less the number of weeks of partial disability it previously paid, as set forth above.

---

[20] Because Claimant's benefits were suspended for some time, his receipt of 104 weeks of total disability compensation was delayed until 2013.

[21] Pursuant to *Whitfield*, the Board was correct to reinstate Claimant's benefits from partial to total as of the date Claimant filed his Petition. The date of reinstatement to total disability benefits is important as it establishes the date that Claimant's disability status changed.

This result is consistent with the plain language of Act 111, as well as this Court's *en banc* decision in *Whitfield*. This approach also gives effect to the Supreme Court's decision in *Protz II*. While it is true that Section 306(a.3) essentially reenacted the IRE provisions, importantly, Section 306(a.3) **did not take effect** until it was enacted on October 24, 2018. Therefore, until that time, Employer could not utilize an IRE to change Claimant's disability status, even if the IRE otherwise complied with the later enacted requirements of Section 306(a.3)(1) because no law permitted Employer to utilize an IRE process until Act 111 was enacted. There is no provision in Act 111 which specifically or implicitly provides for an IRE performed **prior** to Section 306(a.3)'s enactment to be validated afterward. Arguably, this would undermine the invalidation of IREs by the Supreme Court in *Protz II*,[22] whereas the approach set forth herein gives effect to the statutory language while upholding the legislative balance of claimants' and employers'/insurers' interests in light of *Protz II* and Act 111.

Here, the Board's conclusion that Claimant was entitled to reinstatement of total disability benefits as of the date Claimant filed the Petition is consistent with Act 111, the WC Act, and precedent. Accordingly, we affirm.

**RENÉE COHN JUBELIRER,** Judge

___

[22] We note that in *Protz II*, the IRE the Supreme Court invalidated was performed using the Sixth Edition of the *Guides* and yielded an impairment rating of 10%. Because the IRE otherwise complied with Act 111, Employer's interpretation would essentially nullify *Protz II* as the claimant would not be entitled to reinstatement or a new IRE.

21

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rose Corporation,                   :
               Petitioner      :
                            :
          v.                :    No. 661 C.D. 2019
                            :
Workers' Compensation Appeal    :
Board (Espada),                 :
             Respondent   :

## O R D E R

**NOW**, August 17, 2020, the Order of the Workers' Compensation Appeal Board, entered in the above-captioned matter, is **AFFIRMED.**

_____
**RENÉE COHN JUBELIRER,** Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rose Corporation,            :
                   Petitioner   :
                             :
        v.                   :   No. 661 C.D. 2019
                             :   Argued: December 11, 2019
Workers' Compensation Appeal  :
Board (Espada),              :
                   Respondent  :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE ELLEN CEISLER, Judge

CONCURRING OPINION
BY PRESIDENT JUDGE LEAVITT                    FILED: August 17, 2020

          The majority holds that Jose Espada (Claimant) is entitled to a reinstatement of total disability benefits as of the date he filed his reinstatement petition, a result that appears to be required by our Supreme Court's recent holding in *Dana Holding Corporation v. Workers' Compensation Appeal Board (Smuck)*, __ A.3d __ (Pa., No. 44 MAP 2019, filed June 16, 2020).  I write separately because I believe that Rose Corporation (Employer) has presented a cogent argument that because Claimant's 2013 impairment rating evaluation (IRE) conformed to the standards of Act 111[1] for a modification, his reinstatement petition should have been denied.

          Section 4 of Act 111 established new standards for an IRE that became effective "immediately."  First, the IRE must be conducted in accordance with the

---

[1] Act of October 24, 2018, P.L. 714, No. 111 (Act 111).

Sixth Edition of the American Medical Association's Guides to the Evaluation of Permanent Impairment (AMA Guides). Second, the IRE must report a whole body impairment of less than 35% in order to modify the claimant's disability status.[2] A whole body impairment of 36%, for example, permits the claimant to remain on total disability. *See* Section 306(a.3) of the Workers' Compensation Act (Act), 77 P.S. §511.3.[3] With respect to the implementation of Section 306(a.3), Section 3 of Act 111 states as follows:

---

[2] Section 306(a.3)(4) of the Workers' Compensation Act (Act) states:

> An employe may appeal the change to partial disability at any time during the five hundred-week period of partial disability; Provided, *That there is a determination that the employe meets the threshold impairment rating that is equal to or greater than thirty-five per centum impairment* under the American Medical Association "Guides to the Evaluation of Permanent Impairment," 6th edition (second printing April 2009).

Act of June 2, 1915, P.L. 736, *as amended*, added by Section 1 of Act 111, 77 P.S. §511.3(4) (emphasis added).

[3] Section 306(a.3) of the Act, added by Act 111, states, in relevant part, as follows:

> (1) When an employe has received total disability compensation pursuant to clause (a) for a period of one hundred and four weeks, unless otherwise agreed to, the employe shall be required to submit to a medical examination which shall be requested by the insurer within sixty days upon the expiration of the one hundred and four weeks to determine the degree of impairment due to the compensable injury, if any. The degree of impairment shall be determined based upon an evaluation by a physician who is licensed in this Commonwealth, who is certified by an American Board of Medical Specialties-approved board or its osteopathic equivalent and who is active in clinical practice for at least twenty hours per week, chosen by agreement of the parties, or as designated by the department, pursuant to the American Medical Association "Guides to the Evaluation of Permanent Impairment," 6th edition (second printing April 2009).
>
> (2) If such determination results in an impairment rating that meets a threshold *impairment rating that is equal to or greater than thirty-five per centum impairment* under the American Medical Association "Guides to the Evaluation of Permanent Impairment," 6th edition (second printing April 2009), *the employe shall be presumed to be totally disabled and shall continue to receive total disability compensation benefits under clause* (a). If such determination results in an impairment rating less than thirty-five per centum impairment under the American

(1)  For the purposes of determining whether an employee shall submit to a medical examination to determine the degree of impairment and whether an employee has received total disability compensation for the period of 104 weeks under section 306(a.3)(1) of the act, *an insurer shall be given credit for weeks of total disability compensation paid prior to the effective date of this paragraph.* This section shall not be construed to alter the requirements of section 306(a.3) of the act.

(2)  For the purposes of determining the total number of weeks of partial disability compensation payable under section 306(a.3)(7) of the act, *an insurer shall be given credit for weeks of partial disability compensation paid prior to the effective date of this paragraph.*

Act 111, §3 (emphasis added).

Central to this appeal is the lookback provision in Section 3(2) of Act 111, stating that disability payments made "prior to the effective date" of Act 111 will be credited towards a claimant's maximum of 500 weeks of partial disability. Employer argues that this lookback provision, together with Act 111's immediate effective date, express an intention by the General Assembly to make Act 111

---

Medical Association "Guides to the Evaluation of Permanent Impairment," 6th edition (second printing April 2009), the employe shall then receive partial disability benefits under clause (b): Provided, however, That no reduction shall be made until sixty days' notice of modification is given.

\* \* \*

 (7) In no event shall the total number of weeks of partial disability exceed five hundred weeks for any injury or recurrence thereof, regardless of the changes in status in disability that may occur. In no event shall the total number of weeks of total disability exceed one hundred and four weeks for any employe who does not meet a threshold impairment rating that is equal to or greater than thirty-five per centum impairment under the American Medical Association "Guides to the Evaluation of Permanent Impairment," 6th edition (second printing April 2009), for any injury or recurrence thereof.

77 P.S. §511.3 (emphasis added).

retroactive at least in part.[4]  Specifically, Employer argues that an IRE that conforms to Act 111's standards is valid, even if done before the passage of Act 111.  Because Claimant's 2013 IRE was done under the Sixth Edition of the AMA Guides, it complies with Act 111 and is valid.  Because the IRE produced a whole body impairment of 5%, the partial disability payments made by Employer pursuant to this IRE count towards Claimant's 500-week limit for partial disability.   Further, Claimant is not entitled to a reinstatement of his total disability benefits because his 2013 IRE meets the standards in Act 111.

Under Employer's view, any IRE that satisfies Act 111 is valid, regardless of when it was done.  This makes sense because, as Employer points out, an IRE is a medical determination, not a legal one.  Employer's interpretation does not favor only employers.  A claimant on partial disability would be able to use a pre-Act 111 IRE to seek a reinstatement to total disability for an IRE done under the Sixth Edition of the AMA Guides that showed a whole body impairment of at least 35%. The reinstatement would be granted as of the date of the IRE.  This is the case

---

[4] The Legislative Reference Bureau has adopted a regulation to guide the drafting of a retroactivity clause, and it states:

§15.71.  Retroactivity clause.

(a) *Use.  If a statute is to apply retroactively, it is necessary to include a provision to achieve this effect.*  The act (1 Pa.C.S. §1926) provides that no statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly.

(b) *Form.*  A retroactive provision may be in substantially the following form:

"This act shall take effect immediately and shall be retroactive to January 1, 1973."

101 Pa. Code §15.71 (emphasis added).  Employer argues that Act 111 complies with this guideline.

MHL-4

in *White v. Workers' Compensation Appeal Board (City of Philadelphia)*, ___ A.3d ___ (Pa. Cmwlth., No. 1463 C.D. 2019, filed August 17, 2020).[5]

Act 111 does not state that it is applicable only to IREs done on or after the effective date of Act 111, as the Workers' Compensation Appeal Board (Board) believes. *See White v. City of Philadelphia* (Workers' Compensation Appeal Board, No. A18-1204, filed October 2, 2019), slip op. at 6. The legislature could have written an effective date clause stating that Section 306(a.3) "shall apply to IREs done after its effective date." *Cf.* Section 2 of the Act of October 27, 2014, P.L. 2905, No. 189, §2 (stating that an amendment to the Vehicle Code[6] "shall apply to persons sentenced *on or after the effective date of this section*") (emphasis added). The legislature did something quite different in Section 3(2) of Act 111.

The Board's interpretation means that only employers will be able to take advantage of the retroactivity established in Section 3(2) of Act 111. If the new IRE meets Act 111's criteria for a modification, the employer's pre-Act 111 payments for partial disability will be credited to the claimant's 500-week maximum. By contrast, the claimant whose new IRE shows a whole body

---

[5] In *White*, the claimant received a 36% whole body impairment rating under an IRE done under the Sixth Edition of the AMA Guides. She was placed on partial disability under former Section 306(a.2) of the Act, 77 P.S. §511.2. She filed a reinstatement petition seeking to nullify her IRE based on this Court's decision in *Protz v. Workers' Compensation Appeal Board (Derry Area School District)*, 124 A.3d 406 (Pa. Cmwlth. 2015), *aff'd in part and rev'd in part*, 161 A.3d 827 (Pa. 2017). The Workers' Compensation Appeal Board (Board) affirmed the Workers' Compensation Judge's grant of the reinstatement petition but modified the date of reinstatement to the date of claimant's reinstatement petition. The Board held that until the employer initiates the IRE process under Act 111, the employer's claim for a credit for weeks of partial disability paid under the prior IRE was premature. An *en banc* panel of this Court affirmed the Board's adjudication. Under Employer's construction of Act 111, the claimant in *White* would be entitled to a reinstatement of her total disability benefits as of the date of her IRE because her impairment exceeds 35%.
[6] 75 Pa.C.S. §§101-9805.

impairment of 35% will not be able to erase the weeks of partial disability accrued under her pre-Act 111 IRE. This is because the Act makes an IRE effective as of the date it is done. *Westmoreland Regional Hospital v. Workers' Compensation Appeal Board (Pickford),* 29 A.3d 120, 128 (Pa. Cmwlth. 2011) (the claimant's physical condition at the time of the IRE governs and changes the claimant's benefit status as of the date of the IRE physician's evaluation). It seems unlikely the legislature intended a one-sided amendment.

However, the Supreme Court's holding in *Dana Holding Corporation* cannot be reconciled with Employer's proffered construction of Section 3(2) of Act 111. In that case, the claimant's IRE was done under the Sixth Edition of the AMA Guides, and showed an 11% whole body impairment. The IRE was done in 2014 before either the enactment of Act 111 or the issuance of the *Protz* decisions. The claimant challenged the Workers' Compensation Judge's modification of his disability status from total to partial. The Board reversed the modification on the basis of *Protz,* 161 A.3d 827, and reinstated the claimant's total disability status as of the date of the IRE. This Court affirmed the Board. *Dana Holding Corporation v. Workers' Compensation Appeal Board (Smuck)*, 195 A.3d 635 (Pa. Cmwlth. 2018). Days after this Court issued its decision, the General Assembly enacted Act 111.

On further appeal, the Supreme Court rejected the employer's contention that its ruling in *Protz* should be wholly prospective, thereby preserving all weeks of partial disability payments the employer had paid between the date of the IRE and the date of the *Protz* decision. In doing so, the Supreme Court was fully aware of Act 111 and its standards for a valid IRE. *See Dana Holding Corporation*, __ A.3d at __ n.4 (Pa., No. 44 MAP 2019, filed June 16, 2020), slip op. at 7 n.4 (Act

111 repealed Section 306(a.2) of the Act and replaced it with Section 306(a.3), which "tracks its predecessor statute in relevant respects, except that it specifically directs the use of the Sixth Edition of the [AMA] Guides[.]").

To be sure, *Dana Holding Corporation* did not address the construction of Act 111 that has been offered here by Employer. In *Dana Holding Corporation*, the employer assumed, apparently, that a new IRE would be required in order to have pre-Act 111 payments of partial disability credited towards the claimant's 500-week maximum. As noted, the claimant's pre-Act 111 IRE fully complied with Act 111's requirements for a modification under Act 111. However, the Supreme Court set aside the claimant's modification and reinstated her to total disability status as of the date of the IRE. Implicitly, the Supreme Court has adopted the Board's position that the claimant must undergo a new IRE in order for Section 3(2) of Act 111 to have effect.

Accordingly, I am constrained to reject Employer's proffered construction of Act 111 and join the majority.

_____
MARY HANNAH LEAVITT, President Judge