IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Johnny Pierson, Jr.,                          :
                          Petitioner          :
                                              :
            v.                                :   No.  423 C.D. 2020
                                              :   Submitted:  October 23, 2020
Workers' Compensation Appeal                  :
Board (Consol Pennsylvania                    :
Coal Company LLC),                            :
                          Respondent          :


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE J. ANDREW CROMPTON, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CROMPTON                             FILED:  February 9, 2021


            Johnny Pierson, Jr. (Claimant) petitions for review of the April 2, 2020

Opinion and Order (Order) of the Workers' Compensation Appeal Board (Board),

affirming the November 8, 2019 Decision and Order of the Workers' Compensation

Judge (WCJ), which granted the Petition to Modify Compensation Benefits

(Modification Petition) filed by Consol Pennsylvania Coal Company LLC

(Employer).  In addition, Claimant requests that this Court grant his Application for

Argument Before *En Banc* Panel (Application), filed on October 28, 2020, asserting

that "this case presents issues of great public importance" and "will have a

significant impact on the success or failure of many [w]orker[s'] [c]ompensation[]

claimant[s'] cases," with a constitutional impact on the workers' compensation

impairment rating evaluation (IRE) process provided in the Pennsylvania Workers' Compensation Act (Act).[1]  Application, 10/28/2020, at 1-2.  For the reasons that follow, we deny Claimant's Application and affirm the Board's Order.

## I. WCJ's Decision and Order

On August 13, 2014, Claimant sustained a work-related injury in the nature of a "labral tear of the right shoulder," after he tripped while unloading pipe. The injury was recognized by Employer via a Notice of Compensation Payable (NCP).  WCJ's Decision and Order, 11/8/2019, Finding of Fact (FOF) No. 1.

On December 21, 2018, Employer filed the Modification Petition, alleging that Claimant's benefits should be modified from temporary total disability (TTD) to partial disability, effective December 19, 2018, based on an IRE performed by Dr. Jeffrey Moldovan, D.O., on that date.  FOF No. 2.

The WCJ found that Dr. Moldovan is trained and certified in the performance of IREs pursuant to the Sixth Edition of the American Medical Association (AMA) Guides to the Evaluation of Permanent Impairment (*Guides*). FOF No. 4.a.  Dr. Moldovan determined that Claimant had a whole body impairment rating of three percent based on the Sixth Edition of the *Guides*.  FOF No. 4.e.  The WCJ accepted Dr. Moldovan's testimony as credible and determined that Claimant had reached maximum medical improvement and had a whole body permanent impairment of three percent as of December 19, 2018.  FOF No. 7.

The WCJ concluded that Employer met its burden and modified Claimant's benefits from total disability to partial disability based on the results of the IRE.  WCJ's Decision and Order, 11/8/2019, Conclusion of Law (COL) No. 1. The WCJ further concluded that Claimant had preserved various constitutional

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2710.

arguments (relative to IREs and Section 306(a.3) of the Workers' Compensation Act, Act 111),[2] which were beyond his jurisdiction to decide. COL No. 2. Thus, the WCJ did not address those arguments. *Id.*

Claimant appealed to the Board, arguing that the WCJ should not have credited Dr. Moldovan and should have given his medical opinion no weight because he is board certified in emergency medicine but is not an expert in orthopedics and is not a board-certified orthopedic surgeon. Claimant also raised the same constitutional issues he had raised before the WCJ.

## II. Board's Opinion

On April 2, 2020, the Board issued its Order affirming the WCJ. In its Opinion, the Board determined that Dr. Moldovan testified that he is an expert in orthopedics and that the WCJ was within his prerogative as the sole arbiter of credibility and the weight to be assigned to the evidence. Thus, the WCJ's determination in this regard could not be disturbed on appeal. Reproduced Record (R.R.) at 166a.

The Board stated that "appellate review by the Board does not include constitutional issues." *Id.* (citing *Ligonier Tavern v. Workers' Comp. Appeal Bd. (Walker)*, 714 A.2d 1008 (Pa. 1998)). The Board added that "Claimant's arguments in this regard are preserved for any further appeal but are beyond this Board's appellate review and we will not address them further." R.R. at 167a. Accordingly,

---

[2] Act of June 2, 1915, P.L. 736, *as amended*. Act 111 was added to the Act by the Act of October 24, 2018, P.L. 714, No. 111 (Act 111), 77 P.S. §511.3.

3

the Board affirmed the WCJ's Decision and Order granting Employer's Modification Petition. R.R. at 168a. Claimant now petitions this Court for review.[3]

### III.    Applicable Law and Timeline

Before we address the arguments raised by the parties herein, it is valuable to provide a brief timeline and overview of some of the recent, prominent case law and statutory developments in workers' compensation matters that are pertinent to the arguments made in the present case.

On September 18, 2015, this Court issued its decision in *Protz v. Workers' Compensation Appeal Board (Derry Area School District)*, 124 A.3d 406 (Pa. Cmwlth. 2015) (*Protz I*), *aff'd in part and rev'd in part*, 161 A.3d 827 (Pa. 2017) (*Protz II*).   In *Protz I*, we considered whether Section 306(a.2) of the Act[4] was an unconstitutional delegation of legislative authority pursuant to article II, section 1 of the Pennsylvania Constitution,[5] in that it gave the AMA the authority to establish the criteria under which a claimant would be adjudicated partially or totally disabled.  In our decision, we held that Section 306(a.2) of the Act constituted an unconstitutional delegation of legislative authority insofar as it prospectively approved versions of the *Guides* beyond the Fourth Edition without review.  As a

---

[3] Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated.  *Phoenixville Hosp. v. Workers' Comp. Appeal Bd. (Shoap)*, 81 A.3d 830 (Pa. 2013).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *City of Phila. v. Workers' Comp. Appeal Bd. (Kriebel)*, 29 A.3d 762, 769 (Pa. 2011).

[4] Section 306(a.2), *formerly* 77 P.S. §511.2, was repealed by the Act of October 24, 2018, P.L. 714, and replaced by Section 306(a.3).

[5] Pa. Const. art. II, §1 states:  "The legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives."

remedy in *Protz I*, we remanded to the Board to remand to the assigned WCJ to apply the Fourth Edition of the *Guides*, which was the version of the *Guides* in effect at the time the IRE provisions were enacted.

For context, we note here, again, that Claimant in the present matter was injured on August 13, 2014, which was approximately one year prior to our decision in *Protz I*.

On June 20, 2017, nearly two years after our opinion in *Protz I*, our Supreme Court, in *Protz II*, addressed the issue of the constitutionality of former Section 306(a.2) of the Act. In *Protz II*, our Supreme Court held that the General Assembly unconstitutionally delegated its lawmaking authority in violation of the non-delegation doctrine of article II, section 1 of the Pennsylvania Constitution. Based on this determination, the Court struck former Section 306(a.2), in its entirety, from the Act. Former Section 306(a.2) of the Act read, in pertinent part:

> When an employe has received total disability compensation pursuant to clause (a) for a period of one hundred four weeks…the employe shall be required to submit to a medical examination…to determine the degree of impairment due to the compensable injury, if any . . . . The degree of impairment shall be determined based upon an evaluation by a physician . . . pursuant to the most recent edition of the [AMA Guides] . . . . (2) If such determination results in an impairment rating that meets a threshold impairment rating that is equal to or greater than fifty per centum . . . the employe shall be presumed to be totally disabled and shall continue to receive total disability compensation benefits . . . . If such determination results in an impairment rating less than fifty per centum impairment . . . the employe shall then receive partial disability benefits under clause (b) . . . .

*Former* 77 P.S. §511.2 (emphasis added).

5

Subsequently, the General Assembly passed Act 111, which became effective on October 24, 2018. Act 111 replaced former Section 306(a.2) of the Act with new Section 306(a.3). Section 306(a.3) of the Act reads in pertinent part:

> When an employe has received total disability compensation pursuant to clause (a) for a period of one hundred four weeks . . . the employe shall be required to submit to a medical examination . . . to determine the degree of impairment due to the compensable injury, if any . . . . The degree of impairment shall be determined based upon an evaluation by a physician . . . pursuant to the most recent edition of the [AMA Guides], 6th edition (second printing April 2009) . . . . (2) If such determination results in an impairment rating that meets a threshold impairment rating that is equal to or greater than thirty-five per centum . . . the employe shall be presumed to be totally disabled and shall continue to receive total disability compensation benefits . . . . If such determination results in an impairment rating less than thirty-five per centum impairment…the employe shall then receive partial disability benefits under clause (b) . . . .

77 P.S. §511.3 (emphasis added).

We note here that Section 3(2) of Act 111 states: "For the purposes of determining the total number of weeks of partial disability compensation payable under Section 306(a.3)(7) of the Act, an insurer shall be given credit for weeks of partial disability compensation paid prior to the effective date of this paragraph." 77 P.S. §511.3, Historical and Statutory Notes.

## IV. Arguments

### A. Claimant's Arguments

In the matter before us, Claimant reiterates his argument that Dr. Moldovan's opinion should be accorded no weight because he is not accredited in orthopedic care and that while, as an emergency room doctor, he may "dabble in orthopedics from time to time," it does not mean he is an expert in orthopedics. Citing *IA Construction Corporation v. Workers' Compensation Appeal Board*

6

(*Rhodes*), 139 A.3d 154, 164 (Pa. 2016), Claimant asserts that "[a] workers' compensation judge may validly accord lesser weight to an out-of-specialty opinion regarding the degree of impairment associated with an injury." Claimant's Br. at 12. Thus, Claimant argues, Dr. Moldovan's IRE determination is not credible. Claimant's Br. at 12-13.

In addition, Claimant argues that Act 111 is unconstitutional "on its face," and that it cannot be "constitutionally applied in a retroactive manner, and thus it [can] only be applied to claims that have originated on or after the date of the passage of the present IRE mechanism, October 24, 2018." Claimant's Br. at 8-9. As a result, "Claimant propose[s] that the present IRE mechanism [can] only be constitutionally implemented by an employer at the conclusion of [the] 104th week from the date of [a] work-related injury sustained on [or after] October 24, 2018." Claimant's Br. at 9. In addition, Claimant argues that his IRE is invalid because it occurred before he had received 104 weeks of TTD *after* the enactment of Act 111. Claimant's Br. at 28.

Claimant states:

> On June 20, 2017, [our] Supreme Court declared the IRE section, Section 306(a.2) [of the Act], unconstitutional in its entirety, and thus eliminated the IRE mechanism . . . . But, on October 24, 2018, the Pennsylvania General Assembly passed Act 111, replacing [former Section] 306(a.2) [of the Act] with [Section] 306(a.3), to revive the IRE mechanism. More importantly, as a result of [*Protz II*], the law at the time of an injury before Act 111 did not constitutionally provide for the mechanism of an IRE. Since [*Protz II*] rendered the IRE mechanism unconstitutional in its entirety, [our] Supreme Court impliedly admitted that IREs . . . never should have been permissible, dating back to 1996.

Claimant's Br. at 13.

7

Claimant adds that, "[f]or an IRE to apply to a claimant, a claimant first must have received TTD for 104 weeks. If a claimant has not received TTD for 104 weeks, an IRE cannot take effect." Claimant's Br. at 14. Claimant further argues:

> [Act 111] allows an employer to receive credit for weeks that have been paid prior to Act 111 to meet the aforementioned 104-week prerequisite. In that regard, an employer is credited for weeks of TTD governed by prior law that never even considered using weeks of compensation as credits toward effecting a mechanism to cut a claimant's benefits short. Thus, when an IRE is applied to a claimant that has received at least one week of TTD before Act 111, and the IRE determines the claimant to be less than 35% impaired, the claimant's TTD is necessarily cut short by at least one week.

Claimant's Br. at 15. Claimant further argues that Act 111 "unduly interferes with the number of weeks that [he] can receive benefits, calculated at the time of injury." Claimant's Br. at 16.

Claimant acknowledges that legislation which only affects procedure may be applied retroactively. However, here, Claimant argues that the change in the law was substantive in that it imposed "new legal burdens on past transactions," thus it cannot be construed to apply retroactively. Claimant's Br. at 18. Claimant asserts that substantive rights include a claimant's right to workers' compensation benefits as well as the right of an employer to obtain a modification of a claimant's benefits and that "a substantive right attaches to the initial calculation of the compensation rate for claimants." *Id*. (citing *Keystone Coal Mining Corp. v. Workmen's Comp. Appeal Bd. (Wolfe)*, 673 A.2d 418 (Pa. Cmwlth. 1996)). Citing *Pittsburgh Steelers Sports, Inc. v. Workers' Compensation Appeal Board (Williams)*, 814 A.2d 788 (Pa. Cmwlth. 2002), Claimant notes that this Court "declared that the law in effect at the

8

time of injury not only determined the method of calculation benefits, but also determined the calculation of credits against those benefits." Claimant's Br. at 19.

Claimant adds the provisions of Act 111, at issue here, "violate vested rights specifically secured by due process and the Remedies Clause of the Pennsylvania Constitution."[6] Claimant's Br. at 22. In addition, Claimant states that, in *City of Warren v. Workers' Compensation Appeal Board (Haines)*, 156 A.3d 371, 376 (Pa. Cmwlth. 2017), this Court "reiterated the general premise that 'statutes are to be construed to operate prospectively, absent clear language to the contrary.'" Claimant's Br. at 23. Claimant argues that "Act 111 does not contain such form necessary to have retroactive effect."[7] Claimant's Br. at 24.

Further, Claimant contends that

> [s]ince [our] Supreme Court decided that the IRE had been unconstitutional in its entirety in *Protz II*, the former IRE mechanism never should have applied to Claimant's calculation of compensation in any event. That is to say, the law that Claimant filed his claim under never constitutionally provided for an IRE. Accordingly, Claimant never should have had to factor into his calculation of his weeks of compensation the possibility that his benefits could be cut short by an unconstitutional IRE. As such, the IRE provided by Act 111 provides

---

[6] Pa. Const. art. I, §11.

[7] The Pennsylvania Association for Justice (Association) filed an Amicus Curiae Brief (Brief) in support of Claimant's argument, asserting that "[b]ecause Act 111 changed how disability benefits are determined, and limited many injured workers to receiving no more than 500 weeks of future benefits, it is a substantive amendment to the [Act] that may only apply [prospectively]" and that "this Court must determine that the Act 111 IRE provisions apply only to injuries suffered after October 24, 2018." Association's Br. at 4. The Association states that our Supreme Court, in *Protz II*, "declared the IRE provision of the Act unconstitutional and void from the date of its enactment." Association's Br. at 5. The Association argues that "[t]o [ ] allow a change in benefits from total to partial on the basis of a statute passed after the date of injury and the granting of the property right to continued indemnity benefits violates the due process and due course of law rights of all injured workers to continuing unfettered indemnity benefits." Association's Br. at 26.

9

for a mechanism that never existed when Claimant's cause of action accrued. In consequence, the Act 111 IRE [provision] interferes with Claimant's vested right to the calculation of his compensation that arose on the date of injury and had correspondingly been paid to Claimant . . . .

Significantly, . . . the vested right to have benefits calculated at the time of injury has not been repudiated by [our] Supreme Court to this day.

Claimant's Br. at 26-27.

## B. Employer's Arguments

Employer responds to Claimant's argument about Dr. Moldovan's credentials by noting that Dr. Moldovan was approved by the Bureau of Workers' Compensation as a qualified physician to perform IREs under the Act. Further, Employer notes that the WCJ found Dr. Moldovan credible and accepted his testimony and that those credibility determinations "are within the exclusive province of the WCJ and cannot be disturbed on appeal." Employer's Br. at 6 (citing *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043 (Pa. 2003); *Lehigh Cnty. Vo-Tech Sch. v. Workmen's Comp. Appeal Bd. (Wolfe)*, 652 A.2d 797 (Pa. 1995)). Although Employer acknowledges that a WCJ may give less weight to an "out-of-specialty" opinion, it asserts that this was not the case in the present matter. Employer's Br. at 12. Employer points out that Claimant did not object to Dr. Moldovan's qualifications before he performed the IRE or during his testimony. Further, Employer notes that there is no requirement in the Act that would necessitate Dr. Moldovan to be board certified in orthopedics in order to perform an IRE relative to same. Employer adds that Dr. Moldovan "considers himself to be an expert in orthopedic care [due to] his long-term work in emergency medicine," and "Claimant did not refute that Dr. Moldovan does not 'merely dabble' in orthopedics as Claimant now contends, but rather is an expert." Employer's Br. at 14.

In response to Claimant's constitutional arguments, Employer asserts that Act 111 reestablished the IRE process in Pennsylvania for modifying workers' compensation benefits from TTD to partial disability and has already withstood a constitutional challenge in *Pennsylvania AFL-CIO v. Commonwealth*, 219 A.3d 306 (Pa. Cmwlth. 2019). Employer adds that Act 111 has also withstood challenges to the credit language of Section 3(1)[8] as addressed in *Rose Corporation v. Workers' Compensation Appeal Board (Espada)*, 238 A.3d 551 (Pa. Cmwlth. 2020).

Employer notes that an administrative agency "has no jurisdiction to determine the constitutional validity of its own enabling legislation" and that the Board "cannot declare provisions of the Act to be unconstitutional." Employer's Br. at 8 (citing *Ruzin v. Dep't of Lab. & Indus., Bureau of Workers' Comp.*, 675 A.2d 366 (Pa. Cmwlth. 1996), and *Ligonier Tavern*). Thus, Employer asserts the WCJ and the Board did not err by not addressing questions raised by Claimant relative to the constitutionality of Act 111.

Employer asserts that Section 3(1) of Act 111 is clear in that it allows an employer to seek an IRE after receiving 104 weeks of TTD and that an insurer/employer will be given credit for any weeks of TTD it paid prior to the effective date of the Act. Citing *Rose Corporation*, Employer notes that this Court determined that an employer could seek a new IRE under Act 111 where a claimant

---

[8] Section 3(1) of Act 111 reads:

> For the purposes of determining whether an employee shall submit to a medical examination to determine the degree of impairment and whether an employee has received total disability compensation for the period of 104 weeks under section 306(a.3)(1) of the [A]ct, an insurer shall be given credit for weeks of total disability compensation paid prior to the effective date of this paragraph. This section shall not be construed to alter the requirements of section 306(a.3) of the [A]ct.

77 P.S. §511.3, Historical and Statutory Notes.

11

has already received 104 weeks of TTD under the previously existing law and that the employer would be entitled to a credit for any weeks of partial disability it had paid to the claimant after the claimant's first IRE, which occurred prior to the effective date of Act 111. Employer contends that the present matter is the same as *Rose Corporation*, as Claimant, here, had already received 104 weeks of TTD prior to the effective date of Act 111, and, thus, Employer was entitled to request an IRE pursuant to Act 111.

Finally, Employer disagrees with Claimant's argument that he has a right to benefits as calculated at the time of injury, noting that there are always reasonable expectations under the Act that benefits may change, "both in status and in amount based on various remedies provided for in the Act." Employer's Br. at 16. Employer acknowledges that it is "generally accurate that a claimant retains various rights to benefits until such time as he is found ineligible for said benefits . . . . However, claimants haven't automatically lost anything by reason of enactment of Act 111. Rather, an employer can demonstrate an entitlement to change a claimant's benefit status by way of a qualifying IRE under the Act." *Id.* "[Act 111] specifically provides an [IRE] upon an employee's receipt of 104 weeks of TTD benefits. The resulting percentage of whole body impairment will dictate whether a change in the employee's disability status will change from total to partial or remain the same." Employer's Br. at 16-17.

### V. Discussion

Initially, we address Claimant's argument that the Board erred by affirming the WCJ's acceptance of Dr. Moldovan's testimony. In his testimony, Dr. Moldovan stated that he is certified by the American Osteopathic College of Emergency Medicine and that his active clinical practice is at least 20 hours per

12

week. R.R at 73a. He also confirmed that he is trained and certified to perform IREs pursuant to the Sixth Edition of the *Guides*, including the second printing of same. R.R. at 74a. Dr. Moldovan further confirmed that he is on a list of physicians approved by the Bureau of Workers' Compensation for performing IREs. R.R. at 76a. Dr. Moldovan acknowledged that he is not board certified as an orthopedic surgeon. However, based on his experience as an emergency room physician, he considers himself to be an expert in orthopedics, asserting that, as an emergency room doctor, he needs to know *all* areas of medicine to some degree. R.R. at 82a-83a. Further, Dr. Moldovan testified to performing a total of 939 IREs since 2004. R.R. at 107a. As noted by Employer, Claimant did not object to Dr. Moldovan's credentials but, rather, objected only to the constitutionality of IREs generally. R.R. at 84a.

Claimant never presented any evidence that Dr. Moldovan was unqualified to perform his IRE, despite now raising such a claim. As the WCJ found Dr. Moldovan credible and accepted his testimony, and such credibility determinations "are within the exclusive province of the WCJ and cannot be disturbed on appeal," we see no basis for us to determine otherwise. *See* Employer's Br. at 6 (citing *Daniels*, 828 A.2d 1043; *Lehigh Cnty. Vo-Tech Sch.*, 652 A.2d 797. Employer acknowledged that a WCJ may give less weight to an "out-of-specialty" opinion, as Claimant asserts, but there is no requirement that the WCJ do so, and he did not do so here. *See* Employer's Br. at 12. Again, this was a matter within the WCJ's discretion, and the Board properly recognized as much. Further, there is no requirement in the Act that an IRE doctor be board certified in the area in which he offers his opinion. Section 306(a.3) of the Act, put in place by Act 111, states in part, only that in the case of an IRE:

13

> The degree of impairment shall be determined based upon an evaluation by a physician who is licensed in this Commonwealth, who is certified by an American Board of Medical Specialties-approved board or its osteopathic equivalent and who is active in clinical practice for at least twenty hours per week, chosen by agreement of the parties, or as designated by the department, pursuant to the [Guides], 6th edition (second printing April 2009).

Section 306(a.3)(1) of the Act, 77 P.S. §511.3(1). Accordingly, we see no error in the Board's determination that the WCJ did not err when he accepted Dr. Moldovan's medical opinion as credible because it was his prerogative to do so as "sole arbiter of credibility and weight to be assigned the evidence, and that determination cannot be disturbed on appeal." Board Op., 4/2/2020 at 4; R.R. at 166a.

We next address Claimant's arguments relative to the constitutionality of Act 111 and its application to Claimant in light of the fact Claimant's injury occurred in 2014, prior to both our Supreme Court's determination in *Protz II* and the passage of Act 111.

We recently opined on the constitutionality of Act 111 in *Pennsylvania AFL-CIO v. Commonwealth*, 219 A.3d 306. In that case, we determined Act 111 was not an unconstitutional delegation of legislative authority, as the prior IRE provision of the Act was determined to be. Specifically, we stated:

> [t]he non-delegation doctrine does not prohibit the General Assembly from "adopting as its own a particular set of standards which already are in existence at the time of adoption." That is what the General Assembly did here – it adopted the Sixth Edition, second printing, which PA AFL-CIO admits was in existence when Section 306(a.3) was enacted, "as its own." When such an adoption occurs, the General Assembly is exercising its legislative and policy making authority by deciding that it is those particular standards that will become the law of

14

> this Commonwealth. It is not delegating its authority to legislate. The General Assembly made a policy decision regarding the standards that will apply to IREs in the Commonwealth going forward.

*Pa. AFL-CIO*, 219 A.3d at 316 (quoting, in part, *Protz II*, 161 A.3d at 838) (emphasis omitted). Our opinion in *Pennsylvania AFL-CIO* was affirmed by a brief *per curiam* order of our Supreme Court, which read, in pertinent part, simply: "this 18th day of August, 2020, the Order of the Commonwealth Court is [affirmed]." *See Pa. AFL-CIO v. Commonwealth* (Pa., No. 88 MAP 2019, filed August 18, 2020). Although we acknowledge that the determination in *Pennsylvania AFL-CIO* was relative to whether Act 111 was an unconstitutional delegation of legislative authority, it was nevertheless a test of Claimant's assertion that Act 111 is unconstitutional "on its face," and the consensus was that it is not. *See* Claimant's Br. at 8.

In addition, and in regard to the issue of the retroactive application of the 104-week and credit provisions of Act 111, we first address Claimant's contention that *Protz II* rendered former Section 306(a.2) of the Act void *ab initio* when it was struck down as an unconstitutional delegation of legislative authority.

In *Whitfield v. Workers' Compensation Appeal Board (Tenet Health System Hahnemann LLC)*, 188 A.3d 599 (Pa. Cmwlth. 2018), we cited our 1980 opinion in *Department of Labor and Industry, Bureau of Employment Security v. Pennsylvania Engineering Corporation*, 421 A.2d 521, 523 (Pa. Cmwlth. 1980), noting: "[a] law is given retroactive effect when it is used to impose new legal burdens on a past transaction or occurrence." *Whitfield,* 188 A.3d at 616. We relied on *Warren v. Folk*, 886 A.2d 305 (Pa. Super. 2005), to further explain when a law is to be given retroactive effect. In *Warren*, the Pennsylvania Superior Court explained that it, and our Supreme Court, had considered the issue of retroactivity in terms of whether the statute in question affects vested rights and determined that

15

> [w]here no vested right or contractual obligation is involved, an act is not retroactively construed when applied to a condition existing on its effective date even though the condition results from events prior to that date . . . . A "vested right" is one that "so completely and definitely belongs to a person that it cannot be impaired or taken away without the person's consent."

*Id*. at 308. While Claimant, here, argues that he has a right to benefits as calculated at the time of injury, there are reasonable expectations under the Act that benefits may change. We acknowledge that a claimant retains a certain right to benefits until such time as he is found to be ineligible for them. However, claimants, such as the one in the matter before us, did not automatically lose anything by the enactment of Act 111. Act 111 simply provided employers with the means to change a claimant's disability status from total to partial by providing the requisite medical evidence that the claimant has a whole body impairment of less than 35%, after receiving 104 weeks of TTD benefits.

As this Court opined in *Rose Corporation*, the General Assembly made it clear in Act 111 that weeks of TTD and partial disability paid by an employer/insurer prior to the enactment of Act 111 count as credit against an employer's new obligations under Act 111. In *Rose Corporation*, we said, in reference to Act 111:

> The plain language of Section 3 establishes a mechanism by which employers/insurers may receive credit for weeks of compensation previously paid. First, Section 3(1) provides that an employer/insurer "shall be given credit for weeks of total disability compensation paid prior to the effective date of this paragraph" for purposes of determining whether the 104 weeks of total disability had been paid. This 104 weeks is important because, under both the former and current IRE provisions, a claimant need not attend an IRE until after the claimant receives 104 weeks of total compensation. 77 P.S. §[511.3(1)]; *former* . . . 77 P.S. §[511.2(1)]. *See* Section 3(1) of Act 111. Therefore, pursuant to

16

Section 3(1), an employer/insurer will receive credit towards this 104 weeks for any weeks of total disability benefits that were previously paid prior to Act 111's enactment. Second, an employer/insurer will be given credit for any weeks of partial disability compensation paid prior to enactment of Act 111 "[f]or the purposes of determining the total number of weeks of partial disability compensation payable under [S]ection 306(a.3)(7) of the [WC A]ct." Section 3(2) of Act 111. In short, any weeks of partial disability previously paid will count towards the 500-week cap on such benefits.

*Rose Corp.*, 238 A.3d at 561-62.

In *Rose Corporation*, we also added: "Through the use of very careful and specific language, the General Assembly provided employers/insurers with credit for the weeks of compensation, whether total or partial in nature, previously paid." *Rose Corp.*, 238 A.3d at 562.

Claimant acknowledges that this Court opined, in *City of Warren*, that statutes are construed "to operate prospectively absent clear language to the contrary," but he also asserts that "Act 111 does not contain such form necessary to have retroactive effect." Claimant's Br. at 23-24 (citing *City of Warren*, 156 A.3d at 376). However, as we made clear in *Rose Corporation*, the 104-week and credit provisions of Act 111 were explicitly given retroactive effect by the clear language used by the General Assembly.

Claimant, herein, argues that the General Assembly cannot take away his "vested rights" and that it did not explicitly express an intent to apply the provisions of Act 111 in any sort of a retroactive fashion. *See* Claimant's Br. at 26-27. As we noted above, Claimant's "vested rights" have not been abrogated by Act 111. Further, we believe it is clear that the General Assembly intended for the 104-week and credit weeks provisions of Act 111 to be given retroactive effect, where, as we noted in *Rose Corporation*, it stated in plain language it was doing so. Thus,

17

Claimant does not prevail in his arguments relative to the constitutionality of Act 111, and we see no reason to disturb the Board's Order affirming the WCJ.

### VI. Application for Argument Before En Banc Panel

Upon consideration of the arguments of the parties and the facts and relevant law at issue, and in accordance with our Discussion above, we are able to form our opinion in this matter without the necessity of any further elucidation that may be provided through oral argument. Thus, Claimant's Application for Argument before an *en banc* panel of this Court is denied.

### VII. Conclusion

For all of the foregoing reasons, we affirm the Order of the Board, and deny Claimant's Application for Argument Before *En Banc* Panel.

_____
J. ANDREW CROMPTON, Judge

18

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Johnny Pierson, Jr.,                          :
               Petitioner          :
                                   :
            v.                               :   No.  423 C.D. 2020
                                   :
Workers' Compensation Appeal        :
Board (Consol Pennsylvania             :
Coal Company LLC),                        :
               Respondent       :

# **O R D E R**

      **AND NOW**, this 9th day of February 2021, the April 2, 2020 Order of the Workers' Compensation Appeal Board is **AFFIRMED**.    Petitioner's Application for Argument Before *En Banc* Panel is **DENIED**.

                                  _____

                                  J. ANDREW CROMPTON, Judge