# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Warren, : 
           Petitioner : 
       : 
      v. : No. 468 C.D. 2016
       : Argued: December 14, 2016
Workers' Compensation Appeal : 
Board (Thomas Haines, Deceased, : 
by Sharon Haines, Claimant), : 
           Respondent : 


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
            HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE ROBERT SIMPSON, Judge
            HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE ANNE E. COVEY, Judge
            HONORABLE MICHAEL H. WOJCIK, Judge
            HONORABLE JULIA K. HEARTHWAY, Judge

OPINION
BY PRESIDENT JUDGE LEAVITT           FILED: March 9, 2017

      The City of Warren (Employer) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) granting the fatal claim petition of Sharon Haines (Claimant), widow of Thomas Haines (Decedent), who died of colon cancer six years after he retired from the Warren Fire Department. The Board concluded that Decedent's colon cancer was an occupational disease under the Workers' Compensation Act (Act),[1] and, thus, compensable. Employer contends that the Board's conclusion was erroneous. First, Employer contends that Decedent's claim for compensation had extinguished under the applicable statute of repose, and the legislature's subsequent enactment of a different statute of

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2708.

repose, specific to firefighters who develop cancer, did not revive Decedent's extinguished claim. Second, Employer contends that Claimant did not prove that Decedent's cancer was work-related because her medical evidence did not satisfy the *Frye*[2] standard for expert evidence.

**Background**

On January 17, 2012, Claimant filed a fatal claim petition seeking workers' compensation benefits as the dependent wife of Decedent. In addition, the Estate of Decedent filed a claim petition for the payment of medical bills incurred for the treatment of Decedent's colon cancer. Decedent worked for Employer as a firefighter from January of 1970 until his retirement on February 2, 2003. He died on August 18, 2009, approximately 341 weeks after his retirement.

While working at the department, Decedent fought fires in houses and in industrial facilities, such as refineries. When responding to the different fires, Decedent was exposed to smoke, soot, and other carcinogens, including asbestos. At the firehouse, Decedent was exposed to diesel fumes and cigarette smoke. Decedent smoked moderately for several years, and he drank alcoholic beverages on social occasions.

In support of the claim petitions, Claimant introduced the deposition testimony of Barry L. Singer, M.D., who is board certified in internal medicine, hematology, and medical oncology. In a letter dated January 10, 2012, Dr. Singer opined that the direct cause of Decedent's death was his "incurable Stage IV colon cancer," which was diagnosed in August 2008. Reproduced Record at 209a-211a (R.R. ___). In August of 2009, Decedent died of respiratory failure, sepsis, and

---

[2] *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923).

pneumonia, secondary to his cancer. Decedent's work as a firefighter exposed him to carcinogens, including asbestos, described by Dr. Singer as "a known cause of adenocarcinoma of the bowel." R.R. 211a. Dr. Singer opined that Decedent's "30-some-year career in the fire department" was a substantial contributing factor in his development of colon cancer and, ultimately, his death. Notes of Testimony (N.T.), 9/28/2012, at 34; R.R. 133a.

In opposition, Employer presented the deposition testimony of Tee Guidotti, M.D., M.P.H., who is board certified in internal medicine, pulmonary medicine, and occupational medicine; he is trained in toxicology and epidemiology.[3] For 20 years, Dr. Guidotti has been investigating the relationship between cancer and the exposure to toxins sustained by those engaged in firefighting; he has testified as an expert on occupational disease and methodology on numerous occasions.

Dr. Guidotti criticized Dr. Singer's report, from which he "could not really discern that any methodology was, in fact, used." N.T., 1/21/2013, at 22; R.R. 1019a.[4] Dr. Guidotti explained that Dr. Singer's work did "not meet the standards generally accepted in the scientific or medical communities for evaluating general causation in an occupational case." R.R. 1253a.

---

[3] Dr. Guidotti explained that, "[t]oxicology is often called the science of poisons. It actually has more to do with the science of how chemicals affect the body and how the body responds to those chemicals." N.T., 1/21/2013, at 10; R.R. 1007a.

[4] *City of Philadelphia Fire Department v. Workers' Compensation Appeal Board* (*Sladek)*, 144 A.3d 1011 (Pa. Cmwlth. 2016) (*en banc*), *appeal granted* (Pa., No. 405 EAL 2016, filed March 1, 2017), sets forth in greater detail Dr. Guidotti's criticisms of Dr. Singer's reports and methodology. Dr. Guidotti observed that Dr. Singer's reports were "almost rubber-stamped[,]" did not discuss alternative explanations, and reached "conclusions [that] were identical." *Id.* at 1017. Dr. Guidotti criticized Dr. Singer's lack of knowledge of the Bradford Hill criteria, suggesting that he was "not familiar with mainstream epidemiology methodology." *Id.*

3

Employer also offered the report and deposition testimony of Julia Greer, M.D., a professor at the University of Pittsburgh School of Medicine, who specializes in gastroenterology. Dr. Greer opined that "demographic, behavioral, and lifestyle factors, including [Decedent's] advanced age, obesity, alcohol consumption, cigarette smoking, and intake of high heat-cooked red meat, were the causal factors in [Decedent's] development of colon adenocarcinoma." R.R. 1436a. Dr. Greer also stated that there is "no statistically significant, consistent evidence implicating [petrochemicals] in the etiology of colon cancer and no studies have demonstrated an increased risk of colon cancer among fire fighters as a consequence of such exposures." R.R. 1444a. This is true even for firefighters with 30 or more years of employment as firefighters. Dr. Greer opined that Decedent's "personal risk factors were of … a greater magnitude than his exposures to carcinogens [in] firefighting…." N.T., 1/7/2013, at 37; R.R. 1324a.

The WCJ found that Decedent died from colon cancer "due to his exposure to [International Agency for Research on Cancer (IARC)] Group I carcinogens, including benzene and asbestos, in the form of fire smoke, diesel fuel emissions and soot, in his job as a firefighter for the [City]" and granted Claimant's fatal claim petition. WCJ Decision, 1/23/2014, at 15; Finding of Fact No. 25; R.R. 33a. However, the WCJ denied the Estate's claim petition for medical benefits. The WCJ denied Employer's *Frye* motion to have Dr. Singer's expert evidence ruled inadmissible; the WCJ found that Dr. Singer was highly qualified to offer an expert opinion.[5]

_____

[5] In support of its *Frye* motion, Employer made two arguments. First, Employer argued that Dr. Singer was incompetent to testify because his methodology was not shown to be generally accepted in the scientific community. Second, Employer argued that Dr. Singer did not use any
**(Footnote continued on the next page . . . )**

4

Employer appealed to the Board, asserting that the fatal claim petition was time-barred and that, in any case, causation was not proved. The Board affirmed the WCJ.

The Board rejected Employer's contention that Claimant's fatal claim petition was time barred. Decedent's last exposure to carcinogens in the workplace was on or about December 25, 2002, and he died of cancer on August 18, 2009. In 2011, the legislature enacted Act 46,[6] which amended the Act by adding Sections 108(r) and 301(f). 77 P.S. §§27.1(r), 414. Prior to Act 46, a firefighter could submit an occupational disease claim for cancer under Section 108(*l*) of the Act (cancers resulting from exposure to asbestos) and under Section 108(n) of the Act (the "catch-all" provision). 77 P.S. §§27.1(*l*), 27.1(n). A firefighter could proceed under these provisions by showing that his cancer was causally related to firefighting and that the incidence of that cancer is higher in firefighters than in the general population. The Board concluded that the Act 46 amendments merely clarified existing law. The Board acknowledged that its holding meant that employers will be made liable for claims that they believed to have extinguished under prior law. Nevertheless, the Board did not believe that its interpretation of Act 46 imposed an impermissible retroactive application of a new law because Act 46 effected a procedural, not a substantive, change in law.

The Board also rejected Employer's argument that Dr. Singer's causation opinion was not competent under the "*Frye* test" set forth in *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), and *Grady v. Frito-Lay, Inc.*, 839

---

**(continued . . . )**

method, let alone a generally accepted methodology in the scientific community. Rather, Dr. Singer used faulty deductive reasoning in reaching his conclusions.

[6] Act of July 7, 2011, P.L. 251, No. 46.

5

A.2d 1038 (Pa. 2003). The Board held that the *Frye* standard applies in workers' compensation proceedings and, further, that Dr. Singer's expert opinion satisfied the *Frye* standard. The Board noted that Dr. Singer conducted 100 hours of research and relied upon scientific and medical studies to opine on the link between firefighting and colon cancer. Likewise, the Board found Dr. Singer's differential diagnosis methodology to be an acceptable methodology on which to base his causation opinion. The Board dismissed Employer's *Frye* standard argument as no more than an attempt to invade the WCJ's fact finding responsibility.

On appeal, Employer presents two issues. First, Employer argues the Board erred in applying Act 46 retroactively to resurrect a claim that had extinguished under the law governing at the time of Decedent's injury and death. Second, Employer argues that although the Board correctly ruled that *Frye* applied to workers' compensation cases, it erred in its application of the *Frye* test to the facts of this case.

**Analysis**

We begin with a review of the statutory provisions relevant to occupational disease. Section 301(c)(2) of the Act states that a compensable "injury" includes "occupational disease as defined in section 108 of this act." 77 P.S. §411(2). In turn, Section 108 of the Act lists a number of occupational diseases, including radium poisoning, asbestosis, tuberculosis, and silicosis. 77 P.S. §27.1. The Act imposes a time limit upon a claimant's ability to present an occupational disease claim. Section 301(c)(2) states:

> *[W]henever occupational disease is the basis for compensation, for disability or death under this act, it shall apply only to disability or death* resulting from such disease and *occurring within three hundred weeks after the last date of employment* in

6

an occupation or industry to which he was exposed to hazards of such disease: And provided further, That if the employe's compensable disability has occurred within such period, his subsequent death as a result of the disease shall likewise be compensable.

77 P.S. §411(2) (emphasis added). Stated otherwise, the employee's disability or death must occur within 300 weeks of his last date of employment for the occupational disease to be compensable.

In 2011, the General Assembly enacted Act 46, which, *inter alia*, added cancer to the list of occupational diseases for firefighters, but not for other workers. This addition is found in Section 108(r), and it states:

> Cancer suffered by a firefighter which is caused by exposure to a known carcinogen which is recognized as a Group 1 carcinogen by the International Agency for Research on Cancer.

77 P.S. §27.1(r). Recently, this Court held that Section 108(r) requires the firefighter to show that the Group 1 carcinogens to which he was exposed have been shown to cause the type of cancer for which the claimant has been diagnosed. *Sladek*, 144 A.3d at 1021-22.[7] *Sladek* clarified that only after a firefighter establishes that his cancer is an occupational disease under Section 108(r) of the Act do the rebuttable presumptions in Sections 301(e)[8] and (f) come into play.[9]

---

[7] Notably, in this case, a differently composed Board has construed Section 108(r) of the Act as this Court construed it in *Sladek*, 144 A.3d at 1021-22, *i.e.*, that the firefighter must show his cancer is a type of cancer caused by Group 1 carcinogens in order for that cancer to be an "occupational disease."

[8] Section 301(e) was added by Section 3 of the Act of October 17, 1972, P.L. 930. Section 301(e) of the Act establishes a "presumption regarding occupational disease" that applies to any occupational disease sustained by any employee in any line of work, and states:

> If it be shown that the employe, at or immediately before the date of disability, was employed in any occupation or industry in which the occupational disease is

**(Footnote continued on the next page . . . )**

7

Act 46 set a time limitation on the presentation of an occupational disease claim under Section 108(r) of the Act. Section 301(f) of the Act states, in relevant part, as follows:

> Notwithstanding the limitation under subsection (c)(2) [of Section 301] with respect to disability or death resulting from an occupational disease having to occur within three hundred weeks after the last date of employment in an occupation or industry to which a claimant was exposed to the hazards of disease, *claims filed pursuant to cancer suffered by the firefighter under section 108(r) may be made within six hundred weeks after the last date of employment in an occupation or industry to which a claimant was exposed to the hazards of disease*.

77 P.S. §414 (emphasis added). In short, Act 46 created a new time limitation for a Section 108(r) claim by a firefighter that his cancer is an occupational disease and, thus, compensable. Instead of the limit of 300 weeks that applies to all other occupational diseases, a claim filed under Section 108(r) may be made within 600 weeks after the last date of exposure to the hazards of the disease. 77 P.S. §414. It is not necessary that the firefighter sustain disability or die within 600 weeks. Act 46 became effective immediately.[10]

---

**(continued . . . )**

    a hazard, it shall be presumed that the employe's occupational disease arose out of and in the course of his employment, but this presumption shall not be conclusive.

77 P.S. §413.

[9] In *Sladek*, the WCJ did not rule on whether the claimant's evidence showed that his cancer, *i.e.*, melanoma, is a type of cancer caused by exposure to Group 1 carcinogens; accordingly, this Court remanded the case. *Sladek*, 144 A.3d at 1022.

[10] Act 46 provides:

    Section 4. The provisions of this act shall apply to claims filed on or after the effective date of this section.

    Section 5. This act shall take effect immediately.

**(Footnote continued on the next page . . . )**

The question is whether Act 46 was intended to apply prospectively or retroactively. We have long held that "statutes are to be construed to operate prospectively," absent clear language to the contrary. *Department of Labor and Industry, Bureau of Employment Security v. Pennsylvania Engineering Corporation*, 421 A.2d 521, 523 (Pa. Cmwlth. 1980) (citations omitted). Indeed, our legislature has directed that "[n]o statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly." 1 Pa. C.S. §1926. The Legislative Reference Bureau, which is the "supporting agency of the General Assembly," has adopted regulations that, *inter alia*, relate to the drafting of legislation. 101 Pa. Code §1.1. One such regulation contains specific directions on the drafting of a retroactivity clause, and it states as follows:

> §15.71. Retroactivity clause.
>
> (a) *Use*. If a statute is to apply retroactively, it is necessary to include a provision to achieve this effect. The act (1 Pa. C.S. §1926) provides that no statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly.
>
> (b) *Form*. A retroactive provision may be in substantially the following form:
>
> "This act shall take effect immediately and shall be retroactive to January 1, 1973."

101 Pa. Code §15.71. Act 46 does not contain a retroactivity clause. Act 46 states that it is effective immediately, but it does not state that it is retroactive to a specific date.

---

**(continued . . . )**

Act of July 7, 2011, P.L. 251, No. 46.

A statute is not retroactive "merely because some of the facts or conditions upon which its application depends came into existence prior to its enactment." *Gehris v. Department of Transportation*, 369 A.2d 1271, 1273 (Pa. 1977). Our Supreme Court has explained the distinction as follows:

> The general rule in determining whether a statute will be applied retroactively is as follows: "Legislation which affects rights will not be construed to be retroactive unless it is declared so in the act. But, where it concerns merely the mode of procedure, it is applied, as of course, to litigation existing at the time of its passage...."

*Galant v. Department of Environmental Resources,* 626 A.2d 496, 498 (Pa. 1993) (citing *Universal Cyclops Steel Corporation v. Workmen's Compensation Appeal Board*, 305 A.2d 757, 761 (Pa. Cmwlth. 1973) (quoting *Kuca v. Lehigh Valley Coal Company*, 110 A. 731, 732 (Pa. 1920))). Here, the question is whether Act 46 effected a substantive change in the law or changed "merely the mode of procedure" with respect to "litigation existing" at the time of the act's passage. *Id.*

Employer argues that Act 46 effected a substantive change in the law. It established a new occupational disease for a particular class of employee, a firefighter, not previously established in the Act, and it erected a new statute of repose for these claims. Claimant responds that Act 46 merely changed the procedure for an occupational disease claim that had been previously available under the Act. Prior to Act 46, any employee, including a firefighter, could seek compensation for cancer caused by occupational exposures. *See, e.g.,* Section 108(*l*) of the Act, 77 P.S. §27.1(*l*) (cancer resulting from exposure to asbestos); and Section 108(n) of the Act, 77 P.S. §27.1(n) (occupational disease, of any kind, is shown where the incidence is greater than in the general population). Claimant

10

argues that Sections 108(r) and 301(f) provide another procedure for seeking compensation for an occupational disease. 77 P.S. §§27.1(r), 414.

A statute of limitations extinguishes the remedy; a statute of repose extinguishes both the remedy and the right. Accordingly, a statute of limitations is procedural, and a statute of repose is substantive. The difference has been explained as follows:

> A statute of limitations is procedural and extinguishes the remedy rather than the cause of action. A statute of repose, however, is substantive and extinguishes both the remedy and the actual cause of action. Generally, the critical distinction in classifying a statute as one of repose or one of limitations is the event or occurrence designated as the "triggering" event. *In a workers' compensation claim, the common triggering event for statute of limitations purposes is the disability of the employee, which defines the accrual of the action*. That is the point at which all the elements of the action have coalesced, resulting in a legally cognizable claim.

*Westinghouse Electric Corporation/CBS v. Workers' Compensation Appeal Board (Korach)*, 883 A.2d 579, 588 n.11 (Pa. 2005) (citation omitted) (emphasis added). The triggering event for a statute of repose is something other than the point at which the cause of action accrues. *Miller v. Stroud Township*, 804 A.2d 749, 752 (Pa. Cmwlth. 2002).

Recently, in *Fargo v. Workers' Compensation Appeal Board (City of Philadelphia)*, 148 A.3d 514, 521 (Pa. Cmwlth. 2016), *petition for allowance of appeal filed* (Pa., No. 486 EAL 2016, filed November 4, 2016), this Court concluded that "the 600-week limitations period of Section 301(f) acts as a *statute*

11

*of repose ....*"[11] (emphasis added). This is because the 600-week period of Section 301(f) is triggered by a specific event, *i.e.*, the last day of exposure to a workplace hazard, which is independent of the accrual of a remedy. *Id.* Because Section 301(f) of the Act is a statute of repose, it effected a substantive change in the law. As such, it cannot have a retroactive effect without a clear directive from the legislature, and Act 46 lacks that clear directive.[12]

At the time of Decedent's death, Section 301(c)(2) of the Act governed the limitation for his submission of an occupational disease claim. It states, in relevant part, as follows:

> [W]henever occupational disease is the basis for compensation, for disability or death under this act, it shall apply only to *disability or death resulting from such disease* and *occurring within three hundred weeks after the last date of employment* in an occupation or industry to which he was exposed to hazards of such disease….

77 P.S. §411(2) (emphasis added). In *Antonucci v. Workers' Compensation Appeal Board (U.S. Steel Corporation)*, 576 A.2d 401, 405 n.7 (Pa. Cmwlth. 1990), this Court held that Section 301(c)(2) is "a statute of repose, which completely extinguishes the right and not merely the remedy." Likewise, in *Abrams v. Pneumo Abex Corporation*, 981 A.2d 198, 212 n.10 (Pa. 2009), our Supreme Court explained, in dicta, that Section 301(c)(2) is a statute of repose. To

---

[11] Also, in *Lucas v. Workers' Compensation Appeal Board (City of Sharon)*, (Pa. Cmwlth., No. 2606 C.D. 2015, filed December 20, 2016) (unreported), *petition for allowance of appeal filed* (Pa., No. 27 EAL 2017, filed January 17, 2017), this Court concluded that Section 301(f) of the Act was a statute of repose.

[12] Because we determine that Section 301(f) of the Act is a statute of repose and that the WCJ and Board erred in applying this section retroactively, we need not consider whether the addition of Section 108(r) of the Act is a procedural or substantive law change.

satisfy the limitation in Section 301(c)(2), a claimant's disability or death from the occupational disease must occur within 300 weeks of last exposure to a hazard. That did not happen with Decedent.

Decedent last fought a fire on December 25, 2002.[13] He retired on February 2, 2003, and he died on August 18, 2009. Assuming that December 25, 2002, was the date of Decedent's last exposure to a hazard, Decedent died approximately 347 weeks after his last day of exposure. His death did not occur within 300 weeks after Decedent's last exposure to a hazard. Nor did he suffer a disability within that time period. Under Section 301(c)(2) of the Act, Decedent's right to seek compensation for his cancer had extinguished before Act 46 was enacted. 77 P.S. §411(2).

Claimant argues that under our Supreme Court's decision in *City of McKeesport v. Miletti*, 746 A.2d 87 (Pa. 2000), a fatal claim petition does not need to be filed within 300 weeks of the firefighter's last day of exposure. In *City of McKeesport*, the decedent retired on August 31, 1983, after working as a firefighter for approximately 30 years. On February 25, 1993, decedent died, and on September 27, 1993, his wife filed a fatal claim petition alleging that her husband died from a work-related lung disease, for which he began treatment on July 24, 1986. Finding that the claimant had produced credible medical testimony that the decedent was disabled prior to July 24, 1986, the WCJ granted the fatal claim petition. The Supreme Court agreed, holding that "Section 301(c)(2) specifically

---

[13] Employer contends that there is no evidence or testimony regarding the date that Decedent was last exposed to a hazard in his occupation. Although testimony established that Decedent responded to a fire on December 25, 2002, the witness did not recall how Decedent participated, whether in the suppression stage or overhaul stage of the fire. The exposure to toxins is different in each stage of a fire response.

13

permits fatal claim benefits so long as the *disability occurred within* 300 weeks of exposure." *Id.* at 90 (emphasis in original). Where the disability develops within 300 weeks, the "time of death and the filing of a lifetime claim petition are irrelevant to a determination of the timeliness of a fatal claim petition." *Id.* (footnote omitted).

*City of McKeesport* is distinguishable. Here, there is no evidence that Decedent was disabled within 300 weeks of his last date of exposure. Claimant presented no such evidence, and the WCJ did not find that Decedent was disabled as a result of his cancer, let alone identify the date when any alleged disability occurred.

Employer argues that to apply Act 46 retroactively would be unconstitutional under the "due course of law" provision of the Pennsylvania Constitution, which states:

> All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by *due course of law*, and right and justice administered without sale, denial or delay. Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct.

PA. CONST. art. I, §11 (emphasis added). Legislation that purports to revive an expired claim violates the constitutional guarantee of "due course of law." *See Maycock v. Gravely Corp.*, 508 A.2d 330, 334 n.3 (Pa. Super. 1986) (quoting *Overmiller v. D.E. Horn & Co.*, 159 A.2d 245, 249 (Pa. Super. 1960)). Our Superior Court has also held as follows:

> [A] statute of repose ... completely extinguishes the right and not merely the remedy, and may be invoked even though it has not been pleaded. If the right is *completely extinguished* we do not see how it could be revived or reinstated.

14

*Jericho v. Liggett Spring & Axle Co.*, 106 A.2d 846, 850 (Pa. Super. 1954) (emphasis in original). The principle that an extinguished right cannot be revived protects the party with an absolute defense to the extinguished claim:

> A legal exemption from liability on a particular demand, constituting a complete defense to an action brought, stands on quite as high ground as a right of action. If the law of the case at the time when it became complete is such an inherent element in it that a plaintiff may claim it as a vested right, on what possible ground can it be held that a defendant has no vested right with respect to an exemption or defense? The authorities make no distinction between them. 'So he who was never bound either legally or equitably cannot have a demand created against him by mere legislative action.' ... 'A law can be repealed by the lawgiver; but the rights which have been acquired under it, while it was in force, do not thereby cease. It would be an act of absolute injustice to abolish with the law all the effects which it had produced....' Since the effect of the construction contended for would be to impose a liability for a past occurrence where none existed at the time, or, what is the same thing, take away a legal defense available at the time, it is to be avoided. It follows that the plaintiff's case is to be adjudged under the act of 1868, the law of the case when the present cause of action became complete. Her rights are just what they would have been had her husband been an employe of the defendant company.

*Lewis v. Pennsylvania R. Co.*, 69 A. 821, 823 (Pa. 1908) (internal citations omitted). *See also Konidaris v. Portnoff Law Associates, Ltd.*, 953 A.2d 1231, 1242 (Pa. 2008) (recognizing extension of the remedies clause to defenses).

The expiration of Claimant's right to pursue compensation under the statute of repose in Section 301(c)(2) gave Employer an "accrued defense" that cannot be taken away. To do so would violate Employer's constitutional right to "due course of law." We avoid this result in construing Act 46 to establish a new statute of repose for occupational disease claims brought under Section 108(r) of

the Act, but only where the right to bring the claim had not previously expired under Section 301(c)(2) of the Act.

## Conclusion

The WCJ and Board erred in applying the 600-week limitations period of Section 301(f) of the Act retroactively to Claimant's fatal claim petition, which is barred as a matter of law. For these reasons, the order of the Board is reversed.[14]

_____
MARY HANNAH LEAVITT, President Judge

---

[14] Because we hold that the fatal claim petition was not timely filed, we need not address Employer's *Frye* standard issue.

16

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Warren,                     :
            Petitioner        :
                            :
          v.              :  No. 468 C.D. 2016
                            :
Workers' Compensation Appeal   :
Board (Thomas Haines, Deceased,   :
by Sharon Haines, Claimant),     :
           Respondent    :

## **O R D E R**

AND NOW, this 9th day of March, 2017, the order of the Workers' Compensation Appeal Board dated March 7, 2016, in the above-captioned matter is hereby REVERSED.

_____
MARY HANNAH LEAVITT, President Judge