# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Merck Sharp & Dohme, LLC, : 
              Petitioner : 
               : 
       v. :   No. 1496 C.D. 2024 
               :   Argued: September 11, 2025 
Nakeisha Williams (Workers' : 
Compensation Appeal Board), : 
              Respondent : 

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
            HONORABLE MICHAEL H. WOJCIK, Judge (P.)
            HONORABLE MATTHEW S. WOLF, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION BY
PRESIDENT JUDGE COHN JUBELIRER       FILED: October 23, 2025

      Merck Sharp & Dohme, LLC (Employer) petitions for review of the Order of the Workers' Compensation Appeal Board (Board), affirming the Decision of a Workers' Compensation Judge (WCJ) that, in relevant part, granted the Petition to Review Compensation Benefits (Review Petition), expanded the definition of Nakeisha Williams' (Claimant) work injury, and denied, in part, Employer's Petition to Terminate Compensation Benefits (Termination Petition). On appeal, Employer argues the Board erred in affirming because Claimant failed to prove, by competent medical testimony, that the description of the work injury was incorrect and did not prove that her loss of earnings was based on work restrictions associated with her work-related injuries. Because there is substantial, competent evidence that supports the WCJ's Decision granting the Review Petition and awarding ongoing partial disability benefits, we affirm.

## I. BACKGROUND

On June 28, 2022, Claimant was struck on the bridge of her nose by a plexiglass door while working for Employer as an animal care specialist technician II and sustained injuries. Employer accepted injuries described as a facial laceration of the nose and concussion without loss of consciousness via a converted Notice of Temporary Compensation Payable. Employer filed the Termination Petition asserting Claimant was fully recovered from the work injuries as of January 5, 2023, based on the Independent Medical Examination (IME) performed by Lee Harris, M.D. Claimant filed the Review Petition on April 21, 2023, requesting that the description of the work injury be expanded to include post-traumatic stress disorder (PTSD), chronic post-traumatic headaches, and functional neurological symptoms disorder (FNSD).[1] The parties filed answers, respectively denying the material allegations of the petitions.

Employer offered the deposition testimony of Dr. Harris and of Hunter Euler, Employer's Director of Clinical Services. Dr. Harris,[2] who is board certified in neurology, performed the IME of Claimant on January 5, 2023. Based on that examination, and his review of a report by Claimant's physician Julia Kerrigan, M.D. and Claimant's medical records, Dr. Harris opined that Claimant had fully recovered from the accepted concussion injury and was not suffering from any residual neurological injuries. Dr. Harris testified that Claimant could return to her full-time duties without restrictions and required no further medical treatment from

---

[1] Claimant filed a separate review petition alleging that she sustained a permanent, unsightly disfigurement of her face due to the nose laceration, which the WCJ granted. Claimant also filed a Petition for Penalties based on Employer not timely paying her partial disability benefits, which the WCJ also granted. Employer did not appeal those determinations to the Board.

[2] The transcript of Dr. Harris's deposition is found at Certified Record Item 28 and pages 101a to 112a of the Reproduced Record. The WCJ summarized Dr. Harris's testimony in Finding of Fact 7.

a neurological standpoint. Dr. Harris did not examine Claimant for any psychological injuries, such as PTSD, because that is not his specialty. He indicated that any remaining symptoms Claimant was experiencing were psychological, not neurological, and unrelated to the June 28, 2022 work incident. On the topic of FNSD, Dr. Harris stated that this was previously referred to as "conversion disorder," which was "a situation where someone is presenting with what seems like neurological symptoms, but it's found to be not due to a neurological disorder but rather an underlying psychological or psychiatric process." (Reproduced Record (R.R.) at 112a.)

Euler[3] testified that Claimant had returned to work but was not performing all of her time-of-injury duties based on the restrictions imposed by Dr. Kerrigan. Specifically, Claimant was not working with larger animals, such as primates, because their cages are heavier and the animals are more dangerous, and she was not returning to the room where the incident occurred. (*Id.* at 125a.) Euler also explained that although Claimant worked overtime prior to the injury, she was not working overtime because Employer would not accommodate her medical restrictions on overtime. (*Id.* at 129a-30a.)

Claimant offered the deposition testimony of Dr. Kerrigan and Claimant's own testimony. Dr. Kerrigan,[4] who is board certified in neurology, first examined Claimant on November 3, 2022, and continued to treat Claimant as of the date of her deposition. During Dr. Kerrigan's multiple examinations, Claimant's complaints included sensitivity to light and sound, daily post-traumatic headaches with features

---

[3] The transcript of Euler's deposition is found at Certified Record Item 30 and pages 122a to 133a of the Reproduced Record. The WCJ summarized Euler's testimony in Finding of Fact 8.

[4] The transcript of Dr. Kerrigan's deposition is found at Certified Record Item 22 and pages 54a to 85a of the Reproduced Record. The WCJ summarized that testimony in Finding of Fact 9.

of migraines, vision issues, and balance issues. Dr. Kerrigan indicated that Claimant had profound features of FNSD at her first examination, and that, while they are improving, those symptoms continue. While Dr. Kerrigan opined that Claimant's MRI film initially appeared normal, upon reconsideration the film showed that Claimant had features of an increase in intracranial pressure that could be due to trauma. Based on her examinations of Claimant, her review of Claimant's medical records, and her expertise in neurology, Dr. Kerrigan opined that, as a result of the June 28, 2022 incident, Claimant sustained a concussion, post-traumatic headaches, FNSD, and PTSD, of which only the concussion had resolved. According to Dr. Kerrigan, Claimant's work-related concussion or head trauma caused an increase in Claimant's intracranial pressure resulting in post-traumatic headaches, PTSD, and FNSD. Claimant is still suffering numerous symptoms related to those diagnoses, is receiving treatment for those symptoms, and is not fully recovered from the June 28, 2022 work injury. Dr. Kerrigan testified, and the list of restrictions provided to Employer demonstrated, that she slowly allowed Claimant to return to work, increasing Claimant's work hours until Claimant returned to her normal hours, but restricting Claimant from driving, using the pallet jack, working with large animals, lifting more than 15 pounds, and returning to the room where the incident happened. (R.R. at 69a-72a; Certified Record (C.R.) Item 26.) On cross-examination, Dr. Kerrigan acknowledged she is not Claimant's treating psychologist, did not perform any mental status evaluations of Claimant, and was not providing a psychological or psychiatric opinion in this matter. Dr. Kerrigan also acknowledged that the etiology of FNSD is unknown but asserted that research reflected that cognitive/behavioral theory (CBT) is helpful for FNSD.

4

Claimant[5] testified about her job duties, what occurred on June 28, 2022, her ongoing symptoms, and the medical treatment she received and continues to receive, which included medications and CBT once a week. Claimant continued to have restrictions on her driving, including no driving at work, working overtime, working with large animals, and not working in the room where the incident occurred. Claimant has not returned to her pre-injury position because of her symptoms, and she has not fully recovered from the work injury.

The WCJ found Claimant credible and, based on that credible testimony, found Claimant continues to have symptoms related to the work injury, was not fully recovered from the work injury, and was not earning her pre-injury wages since her return to work due to that injury. (WCJ Decision, Finding of Fact (FOF) ¶ 18.) The WCJ accepted both Dr. Harris's and Dr. Kerrigan's testimony that Claimant had fully recovered from the concussion, and accepted Dr. Kerrigan's testimony that Claimant continued to suffer from post-traumatic headaches and FNSD as a result of the June 28, 2022 work incident. (*Id.* ¶¶ 19, 21.) The WCJ rejected Dr. Harris's testimony that Claimant had fully recovered from her work injuries and Dr. Kerrigan's testimony that Claimant suffered PTSD, noting that Dr. Kerrigan was not a psychologist or psychiatrist and was not providing a psychiatric and psychological opinion. (*Id.*)

Based on the above findings, the WCJ concluded that Claimant had met her burden of proof on the Review Petition in part and, therefore, amended the description of the work injury to include post-traumatic headaches and FNSD from which she had not recovered. (WCJ Decision, Conclusion of Law (COL) ¶ 4.) The

_____

[5] Claimant's testimony is found at Certified Record Items 19 and 27 and pages 31a to 50a and 88a to 98a of the Reproduced Record. The WCJ summarized that testimony in Finding of Fact 10.

WCJ concluded that Employer had met its burden of proof on the Termination Petition only as to Claimant's work-related concussion. (COL ¶ 2.)

Employer appealed to the Board, arguing, among other things, that the WCJ erred in relying on Dr. Kerrigan's testimony to expand the description of the work injury to include FNSD because she had acknowledged that the etiology of this diagnosis is unknown and in awarding partial disability benefits. (Board Opinion (Op.) at 2, 8; *see also* C.R. Item 13.) The Board disagreed, concluding that Claimant met her burden of proof on the Review Petition through her own testimony and that of Dr. Kerrigan, which the WCJ found credible. Conversely, the Board held that Employer could not meet its burden of proof beyond the resolution of Claimant's work-related concussion because the WCJ did not credit Dr. Harris's opinion that Claimant was fully recovered from her work-related injuries. The Board also rejected Employer's challenge to ongoing partial disability benefits, explaining that Dr. Kerrigan had not specifically related Claimant's work restrictions to the PTSD diagnoses but indicated that Claimant continued to suffer from work-related injuries, for which Dr. Kerrigan imposed work restrictions. The Board additionally pointed to Claimant's credited testimony that she could not perform her pre-injury work due to her ongoing symptoms. Finally, the Board held that Dr. Kerrigan's acknowledgment on cross-examination that the etiology of FNSD is unknown did not destroy the effectiveness of her prior opinions of causation, ongoing symptomology and treatment, and inability to fully perform the pre-injury position. Accordingly, the Board affirmed.

Employer now petitions this Court for review.[6]

---

[6] This Court's review "is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether **(Footnote continued on next page…)**

## II. DISCUSSION

### A. Whether Claimant Met Her Burden of Proof on the Review Petition

Employer argues it established by credible, competent evidence that Claimant had fully recovered from her accepted work injuries and that Claimant had no other neurological injury related to the work incident. According to Employer, Claimant's attempt to expand the work-related injury to include post-traumatic headaches and FNSD fails because Dr. Kerrigan's testimony was legally insufficient. Employer maintains that this is not a question merely of credibility, but that Dr. Kerrigan's testimony fails to establish that FNSD diagnosis is generally accepted in the medical community as required for her testimony to be admissible under *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923). While the Workers' Compensation Act (Act)[7] is humanitarian in nature, Employer argues "there is no case law which suggests that the evidentiary bar is so low that a claimant can be awarded workers' compensation benefits for a poorly defined condition without establishing the critical element of causation." (Employer's Brief (Br.) at 16-17.) As for Claimant's alleged post-traumatic headaches, Employer points to places in the record where Claimant did not testify about having headaches and Dr. Kerrigan's records did not reference Claimant having headaches, arguing there is "zero factual or medical evidence of record" to establish that such headaches continued after Dr. Harris's IME. (*Id.* at 17.)

Claimant argues that Employer did not raise a *Frye* challenge to the admissibility of Dr. Kerrigan's testimony during the evidentiary proceedings before

constitutional rights were violated." *Elberson v. Workers' Comp. Appeal Bd. (Elwyn, Inc.)*, 936 A.2d 1195, 1198 n.2 (Pa. Cmwlth. 2007). "Substantial evidence is such relevant evidence a reasonable mind might accept as adequate to support a conclusion." *WAWA v. Workers' Comp. Appeal Bd. (Seltzer)*, 951 A.2d 405, 407 n.4 (Pa. Cmwlth. 2008).

[7] Act of June 2, 1925, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.1, 2501-2710.

the WCJ, and, therefore, Employer has not preserved that issue for appellate review. Even if preserved, Claimant asserts Employer did not meet its initial burden of proving that Dr. Kerrigan's diagnosis was the result of novel scientific evidence subject to a legitimate dispute within the medical community, and, thus, the burden never shifted to Claimant to establish the admissibility of the evidence (but she nevertheless did so). (Claimant's Br. at 20-23.) Claimant maintains the facts that the specific etiology of FNSD may be unknown generally and that the condition is not fully understood relate to the weight of Dr. Kerrigan's testimony, not its admissibility. Similarly, Claimant argues, the WCJ credited the evidence relating her post-traumatic headaches to the work incident, which supports the finding that this was a work injury. Claimant asserts these credibility and evidentiary determinations are for the WCJ, not the appellate court, and Employer's arguments asking the Court to reweigh that evidence must be rejected.

At issue here are two petitions, Claimant's Review Petition and Employer's Termination Petition. Section 413(a) of the Act authorizes a WCJ to modify a notice of compensation payable that is "in any material respect incorrect." 77 P.S. § 771. "[T]he burden rests with claimants to establish the existence of additional compensable injuries giving rise to corrective amendments" under Section 413(a). *Cinram Mfg., Inc. v. Workers' Comp. Appeal Bd. (Hill)*, 975 A.2d 577, 582 (Pa. 2009). In a termination proceeding, the employer must establish that the claimant has fully recovered from the work injury and any remaining disability is not related to the work injury. *Benson v. Workmen's Comp. Appeal Bd. (Haverford State Hosp.)*, 668 A.2d 244, 247 n.4 (Pa. Cmwlth. 1995).

Employer argues on appeal that Dr. Kerrigan's opinions as to FNSD are legally insufficient because they did not meet the *Frye* standard for admissibility.

8

"*Frye* is not implicated every time science comes into the courtroom; rather, it applies only to proffered expert testimony involving novel science." *Commonwealth v. Dengler*, 890 A.2d 372, 382 (Pa. 2005). The *Frye* test "provides that 'novel scientific evidence is admissible if the methodology that underlies the evidence has general acceptance in the relevant scientific community.'" *Commonwealth v. Foley*, 38 A.3d 882, 888 (Pa. Super. 2012).[8] A *Frye* challenge to the admissibility of evidence "is a two-step process" in which "**the party opposing the evidence [first] must show** that the scientific evidence is 'novel' by demonstrating 'that there is a legitimate dispute regarding the reliability of the expert's conclusions.'" *Id.* (emphasis and alteration added) (quoting *Betz v. Pneumo Abex LLC*, 998 A.2d 962, 972 (Pa. Super. 2010) (en banc)). If the party opposing the evidence does so, "the proponent of the scientific evidence must show that 'the expert's methodology has general acceptance in the relevant scientific community' despite the legitimate dispute." *Id.* (quoting *Betz*, 998 A.2d at 972).

Upon reviewing Dr. Kerrigan's deposition and the record certified to this Court by the Board, we agree with Claimant that Employer did not assert a *Frye* challenge to the admissibility of Dr. Kerrigan's testimony before the WCJ. The doctrine of waiver applies to workers' compensation proceedings, *Evans v. Workers' Compensation Appeal Board (Highway Equipment & Supply Co.)*, 94 A.3d 1091, 1095 n.4 (Pa. Cmwlth. 2014), and issues not raised before the WCJ are waived, *Budd Baer, Inc. v. Workers' Compensation Appeal Board (Butcher)*, 892 A.2d 64, 67 (Pa. Cmwlth. 2006). Under the Board's regulations regarding oral depositions, "[o]bjections **shall be made** and the basis for the objections stated **at the time of**

---

[8] "In general, Superior Court decisions are not binding on this Court, but they offer persuasive precedent where they address analogous issues." *Lerch v. Unemployment Comp. Bd. of Rev.*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

the taking of the depositions" and "[o]nly objections which are identified **in a separate writing, introduced prior to the close of the evidentiary record**, . . . and stating the specific nature of the objections and the pages where they appear in the deposition . . . **will be preserved for ruling**." 34 Pa. Code § 131.66(b) (emphasis added). "**Objections not so preserved are waived**." *Id.* (emphasis added).

Employer did not file a reply brief pointing to where in the record it preserved this issue in accordance with the regulations, and our review of the record reveals a lack of preservation. Absent from the transcript of Dr. Kerrigan's deposition are any objections by Employer to Dr. Kerrigan's testimony and methodology as being "novel," or even to the admissibility of Dr. Kerrigan's testimony generally. (*See* R.R. at 52a-85a.) The only reference to objections in that transcript is a statement indicating that the **parties agreed** that any objection, and the reasons therefore, **would be stated on the record**, the witness could answer over the objections, and those objections, **if properly preserved**, would be ruled upon by the WCJ at a later time. (*Id.* at 53a.) Additionally, the Certified Record contains no separate writing by Employer to the WCJ identifying the objections made during Dr. Kerrigan's deposition as required by 34 Pa. Code § 131.66(b). Finally, Employer did not object to the admission of Dr. Kerrigan's deposition. (*Id.* at 26a-27a.) For these reasons, Employer's *Frye* challenge to the admissibility of Dr. Kerrigan's testimony has not been preserved for appellate review.[9] *Id.*; *Budd Baer, Inc.*, 892 A.2d at 67.

---

[9] Because Employer did not assert a *Frye* challenge during the WCJ proceedings, it is unclear how Employer could have been successful in "show[ing] that the scientific evidence is novel by demonstrating that there is a legitimate dispute regarding the reliability of the expert's conclusions," which would have then required Claimant to establish that Dr. Kerrigan's "methodology ha[d] general acceptance in the relevant scientific community despite the legitimate dispute." *Foley*, 38 A.3d at 888 (internal quotation marks and citation omitted). This is what occurred in *City of Philadelphia Fire Department v. Workers' Compensation Appeal Board* **(Footnote continued on next page…)**

10

Ultimately, Dr. Kerrigan was qualified as an expert in the field of neurology, and she testified that she regularly treats patients with concussions, FNSD, and post-traumatic headaches. (R.R. at 54a-56a.) Dr. Kerrigan examined Claimant on numerous occasions during which Claimant complained of multiple symptoms of FNSD. (*Id.* at 60a-61a, 65a.) Based on those examinations and her expertise, Dr. Kerrigan diagnosed Claimant with FNSD and explained how the June 28, 2022 work incident caused intercranial pressure resulting in the FNSD, that FNSD is a common condition following a concussion, and how FNSD affects individuals to cause the symptoms that Claimant was experiencing. (*Id.* at 57a, 60a-61a, 72a.) In other words, Dr. Kerrigan clearly testified how FNSD is generally understood and accepted by neurologists and why she believed, within a reasonable degree of medical certainty, Claimant suffered from that disorder due to the work incident. (*Id.* at 60a-64a, 72a-75a, 85a.)

A claimant must establish the causal connection between their work and the injury through unequivocal medical testimony, which means "after providing a foundation," the expert "states that [the expert] believes or thinks the facts exist" and that, in the expert's "professional opinion, the injury or condition did come from assigned cause." *Bristol Borough v. Workers' Comp. Appeal Bd. (Burnette)*, 206 A.3d 585, 609 (Pa. Cmwlth. 2019). "[W]e must review the testimony of a witness as a whole and not take words or phrases out of context." *Id.* An expert's testimony remains unequivocal "as long as the expert does not recant [the] opinion as to

_____

*(Sladek)*, 195 A.3d 197, 202 (Pa. 2018), and *City of Warren v. Workers' Compensation Appeal Board (Haines)*, 156 A.3d 371, 374 (Pa. Cmwlth. 2017), cited by Employer to support that the *Frye* standard applies in workers' compensation cases. (Employer's Br. at 15-16.) In both of those cases, the employers challenged the admissibility or competency of the experts' opinions under *Frye* **during the WCJ proceedings**, *see Sladek*, 195 A.3d at 201-02; *Haines*, 156 A.3d at 374 & n.5, making them distinguishable from the present matter.

11

causation." *Id.* This means that "answers given in cross-examination do not, as a matter of law, destroy the effectiveness of previous opinions expressed by a physician." *Hannigan v. Workmen's Comp. Appeal Bd. (Asplundh Tree Expert Co.)*, 616 A.2d 764, 767 (Pa. Cmwlth. 1992).

Employer focuses on one exchange during cross-examination, in which Dr. Kerrigan agreed that "it appears that the etiology of [FNSD] at this point in the scientific community is unknown," and stated that "[i]t's like so many things in the brain, not well understood." (R.R. at 84a.) Employer's argument, however, disregards the remainder of Dr. Kerrigan's testimony which otherwise explains why the etiology of **Claimant's** FNSD was not unknown but the result of the work-related concussion. (*Id.* at 60a, 72a, 74a-75a.) Dr. Kerrigan's credited testimony, when viewed as a whole, satisfies these standards and, thus, is unequivocal as to Claimant suffering from FNSD as a result of the June 28, 2022 incident, and her response to one question on cross-examination did not "destroy the effectiveness of [her] previous opinions." *Hannigan*, 616 A.2d at 767. Because "a reasonable mind might consider" Dr. Kerrigan's testimony "adequate to support [the WCJ's] conclusion" that Claimant suffers from work-related FNSD, that finding is supported by substantial evidence and is conclusive on appeal. *Glass v. Workers' Comp. Appeal Bd. (City of Phila.)*, 61 A.3d 318, 325 n.4 (Pa. Cmwlth. 2013). Accordingly, we discern no error in the Board's upholding the WCJ's finding that Claimant sustained work-related FNSD, remains symptomatic, and continues to receive treatment for that injury.

Employer additionally challenges the WCJ's finding that Claimant suffers from post-traumatic headaches due to the work incident, but this challenge also fails because there is substantial evidence in the record that supports that finding. Dr.

Kerrigan credibly testified that Claimant consistently complained of experiencing headaches every day, for which Claimant takes medication, and Dr. Kerrigan related those headaches to Claimant being struck in the head at work on June 28, 2022. (R.R. at 57a, 63a, 65a-66a, 73a-76a.) Employer points to Dr. Kerrigan's office note from February 14, 2023, and Claimant's failure to specifically mention suffering from headaches in her testimony, to argue Claimant was not suffering from headaches. (Employer's Br. at 17.)

In a substantial evidence challenge we examine the entire record, and all reasonable inferences drawn from the evidence, in the light most favorable to the prevailing party. *Hoffmaster v. Workers' Comp. Appeal Bd. (Senco Prods., Inc.)*, 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998). It does not matter if there is record evidence that supports contrary findings; rather, the inquiry is whether there is substantial evidence to support those findings that were made. *Id.* If there is evidence that supports the WCJ's findings, those findings are conclusive on appeal. *Glass*, 61 A.3d at 325 n.4.

Here, Dr. Kerrigan explained that while the February 14, 2023 note did not expressly use the word headache, the note indicated that Claimant complained of head pressure, which was "a/k/a headache." (R.R. at 80a.) Additionally, while Claimant may not have expressly stated she had headaches, she did testify that she was taking Amitriptyline, which Dr. Kerrigan explained was used to treat Claimant's headaches. (*Id.* at 66a, 90a.) Claimant also reported suffering "head pressure" to Dr. Harris during her IME in January 2023, and Dr. Harris's review of Claimant's medical records reflect ongoing complaints of headaches and treatment for those headaches. (*Id.* at 115a-16a.) That Claimant did not identify this symptom as one of the many she continued to suffer (and report to her treating physician) due to the

13

work injury does not vitiate Dr. Kerrigan's credited testimony that Claimant continued to complain of headaches which, while improving, remained ongoing and were treated by prescription medications. (*Id.* at 66a.) Examining the record in the light most favorable to Claimant, there is credited, "relevant evidence that a reasonable mind might consider adequate to support [the WCJ's] conclusion" that Claimant suffers from work-related ongoing post-traumatic headaches and is receiving treatment for those headaches from Dr. Kerrigan; therefore, that finding is supported by substantial evidence and is conclusive on appeal. *Glass*, 61 A.3d at 325 n.4.

For these reasons, we discern no error in the Board's affirmation of the expansion of Claimant's work-related injury to include post-traumatic headaches and FNSD.

### B. Whether Claimant is Entitled to Ongoing Partial Disability Benefits Based on the Work Restrictions Imposed by Dr. Kerrigan

Employer also argues Claimant should not have been awarded ongoing partial disability benefits because any loss of earnings she suffers is due to work restrictions that are associated with non-work-related conditions. In this regard, Employer argues the evidence of record reflects that Dr. Kerrigan imposed the work restrictions for Claimant's PTSD, a diagnosis the WCJ declined to add to Claimant's work injury. (Employer's Br. at 19-20 (citing R.R. at 77a).)

Claimant responds that Employer is conflating PTSD, which the WCJ did not include as a work injury, with Claimant's current work restrictions, which are based on her diagnoses of FNSD and post-traumatic headaches. Contrary to Employer's arguments, Dr. Kerrigan did not limit the cause of Claimant's work restrictions to PTSD, as observed by the Board. Because these work-related injuries resulted in work restrictions that reduced her earnings, Claimant argues she has an ongoing

14

disability precluding Employer from meeting its burden of proof on the Termination Petition.

Section 306(b)(1) of the Act provides that a claimant is entitled to receive benefits when she is partially disabled. 77 P.S. § 512(1). The term "disability" for purposes of workers' compensation means a claimant's loss of earning power resulting from a work-related injury. *Weismantle v. Workers' Comp. Appeal Bd. (Lucent Techs.)*, 926 A.2d 1236, 1240 n.10 (Pa. Cmwlth. 2007). Where a claimant returns to work but is earning less than the wages earned at the time of the injury, the claimant "is entitled to receive a percentage of the difference between [the] wages at the time of [the] injur[y] and [the claimant's] earning upon [] return to work." *Harper & Collins v. Workmen's Comp. Appeal Bd. (Brown)*, 672 A.2d 1319, 1321-22 (Pa. 1996). Overtime wages are required to be included in the calculation of a claimant's earnings. *Id.*

Employer does not challenge that Claimant has returned to work with restrictions and is earning less than what she earned before she was injured. Rather, Employer argues the restrictions imposed by Dr. Kerrigan are related only to Claimant's unaccepted PTSD diagnosis, and, therefore, Claimant's loss of earnings is not related to her work injuries. Employer relies on Dr. Kerrigan's statements that she was keeping Claimant out of the room where the injury occurred because "[i]t's sometimes like the scene of the crime . . . as silly as it sounds, PTSD absolutely can be triggered at the place where the incident occurred," and that being in the "room where it happened . . . [is] just very triggering subconsciously" because "PTSD can certainly stick with [a person] forever but time w[ould] tell really." (R.R. at 69a, 71a, 77a.)

15

Again, Employer only focuses on parts of the record that would support a finding contrary to that made by the WCJ and affirmed by the Board. We, however, are required to review the entire record, and the inferences from the evidence therein, in the light most favorable to Claimant, to determine if it can support the findings made regarding Claimant's ongoing work-related disability. *Glass*, 61 A.3d at 325 n.4; *Hoffmaster*, 721 A.2d at 1155.

In addition to the testimony cited by Employer, Dr. Kerrigan testified about Claimant's ongoing symptoms and Dr. Kerrigan's plan to "ease" Claimant back into "normalcy" at work once those symptoms began to improve, which she did slowly, while maintaining restrictions on what Claimant could do based on Claimant's symptoms. (R.R. at 68a-69a.) As confirmed by Dr. Kerrigan's written work restrictions, Dr. Kerrigan initially kept Claimant out of work and then began gradually increasing Claimant's hours while maintaining the following restrictions: no working in the room where the injury occurred; no working with large animals; no lifting more than 15 pounds due to deconditioning; no driving at work; and no using the pallet jack. (C.R. Item 26.) As of Claimant's latest visit, Dr. Kerrigan maintained the work restrictions notwithstanding that Claimant had returned to her normal hours. (R.R. at 70a-71a.) Dr. Kerrigan concluded her testimony with agreeing that "[t]he limitations [] placed on [Claimant's] work capabilities [were] reasonable, necessary and related to the work injury [Claimant] sustained on June 28[], 2022." (*Id.* at 77a.) Given that the credited evidence reflects that Claimant's symptoms relating to her post-traumatic headaches and FNSD include daily headaches with migraine features, balance and vision issues, dizziness, and sensitivity to light, it is reasonable to infer that Dr. Kerrigan's restrictions on Claimant's driving, lifting, using the pallet jack, and working with larger animals

16

because they "can be hard to handle," (*id.* at 71a), are related to those diagnoses and symptoms, rather than being **only** related to the uncredited PTSD diagnosis. Because "a reasonable mind might consider" the above evidence "adequate to support [the WCJ's] conclusion" that Claimant's work restrictions are associated with her work-related ongoing post-traumatic headaches and FNSD, that finding is supported by substantial evidence and is conclusive on appeal. *Glass*, 61 A.3d at 325 n.4.

As for whether Claimant suffered a loss of earnings as a result of the work injuries, Claimant testified that prior to being injured she worked overtime, overtime was available when she returned to work, and she was not able to work overtime after the injury. (R.R. at 37a-38a.) Claimant confirmed that she was earning less than before she was injured. (*Id.* at 38a-39a.) Euler also testified that Claimant worked overtime before the injury but explained overtime was no longer available because Employer would not accommodate Claimant's work restrictions for any overtime hours worked. (*Id.* at 129a-30a.) This evidence supports the finding that Claimant has suffered a loss of earning power as a result of the work restrictions imposed by Dr. Kerrigan and the conclusion that Claimant was entitled to partial disability benefits.

### III.  CONCLUSION

For the foregoing reasons, we discern no error in the Board affirming the WCJ's Decision granting the Review Petition and amending the description of Claimant's work injury to include FNSD and post-traumatic headaches because Claimant met her burden of proof on the Review Petition. The Board likewise committed no error in upholding the award of ongoing disability benefits based on

the credited evidence that Claimant continues to suffer a loss of earnings as a result of the work restrictions related to her work-related injuries.  Accordingly, we affirm.

_____

RENÉE COHN JUBELIRER, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Merck Sharp & Dohme, LLC, : 
       Petitioner : 
 : 
    v. : No. 1496 C.D. 2024
 : 
Nakeisha Williams (Workers' : 
Compensation Appeal Board), : 
       Respondent : 

# **O R D E R**

  **NOW**, October 23, 2025, the Order of the Workers' Compensation Appeal Board, entered in the above-captioned matter, is hereby **AFFIRMED**.

          _____
          RENÉE COHN JUBELIRER, President Judge